Jennifer MORSE, Petitioner,

v.

**SECRETARY OF DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.**

**No. 05–418 V.**

United States Court of Federal Claims.

Nov. 10, 2009.[1]

1. Pursuant to Rule 18(b) of Appendix B of the Rules of the United States Court of Federal Claims, this Opinion and Order was initially filed under seal on October 20, 2009. Pursuant to ¶ 5 of the ordering language, the parties were to propose redactions of the information contained therein on or before November 6, 2009. No proposed redactions were submitted to the court.

Ronald C. Homer, Boston, MA, for petitioner.

Althea Walker Davis, United States Department of Justice, with whom were Tony West, Assistant Attorney General, Timothy P. Garren, Director, Mark W. Rogers, Deputy Director, Gabrielle M. Fielding, Assistant Director, Washington, DC, for respondent.

## OPINION AND ORDER

BUSH, Judge.

Ms. Jennifer Morse and respondent previously reached a settlement as to a stipulated award for her claim for compensation under the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa–1 to –34 (2006) (the Vaccine Act). Respondent nonetheless disputed a portion of petitioner's request for attorneys' fees and costs. The special master assigned to this case reduced petitioner's requested award of expert costs. Now pending before the court is petitioner's motion for review of the special master's June 5, 2009 decision on attorneys' fees and costs (Fees Opin.). For the reasons stated below, the court affirms the special master's decision.

## BACKGROUND

### I. Litigation History

Ms. Morse filed a claim under the Vaccine Act on March 30, 2005 alleging injuries related to her hepatitis B vaccination. The case

was assigned to Special Master Christian J. Moran on February 8, 2006. On January 5, 2009, the parties stipulated to an award for Ms. Morse, and on January 8, 2009, the special master issued a decision incorporating the terms of the parties' stipulation. On February 19, 2009, the Clerk's office entered judgment for petitioner in the lump sum amount of $30,000. The parties' stipulation noted that petitioner would also request reasonable attorneys' fees and costs, as provided by 42 U.S.C. § 300aa–15(e)(1). The special master issued his decision on fees and costs on June 5, 2009.

## II. Fees and Costs Not in Dispute

Respondent United States did not object to the reasonable attorneys' fees requested by Ms. Morse for litigating her claim, and, subsequently, for litigating her attorneys' fees and costs application before the special master, in the total amount of $40,894.20.[2] Respondent also did not contest three categories of costs identified in petitioner's application, which included the expenses of obtaining medical records, mailing expenses and the like. These costs totaled $1693.10. The special master approved the uncontested attorneys' fees and costs as reasonable, and adopted these figures as part of his attorneys' fees and costs decision.

## III. Costs in Dispute

The parties disagreed, however, as to the reasonable total costs of the experts employed by petitioner in this litigation. Petitioner reported costs for the services of two medical experts, Dr. Sherri Tenpenny and Dr. Thomas Morgan. In the initial application for costs submitted by petitioner, Dr. Tenpenny's services were billed at $14,522.50, for 44.5 work hours, and Dr. Morgan's services were billed at $1750, for five work hours.

Dr. Tenpenny's invoice includes only three line items. The first line item is for 43.5 work hours, at $325 per hour, described as "Expert Witness testimony: Review of records, medical literature, draft report and discussion with [counsel]." Pet'r Fees Appl. Tab B at 22. The second line item is for one

work hour for "Phone discussion with [counsel]." *Id.* The third line item is for $60 for the purchase of an article titled "Variants and differential diagnosis of Guillain–Barré syndrome." *Id.* at 22–23. Petitioner included in her fee application a nine-page document authored by Dr. Tenpenny, which appears to be a commentary on Ms. Morse's medical records, titled "case notes." *Id.* Tab D. Respondent questioned "whether it was reasonable for petitioner to engage two experts to review this case," and raised other concerns regarding the qualifications of Dr. Tenpenny and the total hours billed by Dr. Tenpenny. Resp't Fees Resp. at 5–6.

Petitioner filed the curriculum vitae of Dr. Tenpenny one week after respondent questioned Dr. Tenpenny's qualifications as an expert. On the same day, petitioner filed a reply to respondent's response to petitioner's attorneys' fees and costs application. In her reply, petitioner reviewed the early stages of this litigation, when causation of Ms. Morse's vaccine injury and the need for expert analysis of that issue were contested by the parties. Petitioner further explained why Dr. Tenpenny, one of Ms. Morse's treating physicians, was engaged as an expert, and the role she played in resolving this litigation. Petitioner defended Dr. Tenpenny's qualifications to serve as an expert in this matter, and suggested that the hours billed were reasonable to "fully review all of the medical records and to fully review all of the literature to determine whether she could support a link between [petitioner's] vaccine and her injury." Pet'r Fees Reply at 8.

Petitioner also defended the costs expended on Dr. Morgan's services, which were billed at $350 per hour. Dr. Morgan is a neurologist, and was therefore better able to discuss the neurological injuries alleged by Ms. Morse. According to petitioner, Dr. Morgan's expertise supplemented that of Dr. Tenpenny's, and "[e]ach expert provided unique services." Pet'r Fees Reply at 10. Petitioner noted that respondent has sometimes engaged more than one expert in a vaccine case. Petitioner further concluded

**2.** A reduction of $115 was agreed to by the parties and is reflected in the $40,894.20 figure.

that the hours and rates charged by her experts were reasonable.

After the parties failed to settle the dispute over expert costs, petitioner requested leave "to file relevant evidence which will clarify Dr. Tenpenny's invoice." Pet'r March 3, 2009 Mot. at 1. Petitioner stated in her clarification that forty work hours were spent by Dr. Tenpenny reviewing medical records. Pet'r April 14, 2009 Clarification at 3. Petitioner related that Dr. Tenpenny typically "review[s] 25–30 pages of medical records per hour." *Id.* The other 4.5 work hours were spent reviewing one article and in discussions with counsel. *Id.* Petitioner also indicated that Dr. Morgan billed relatively few hours, as a second expert, because he "required only 5 hours to confer with Dr. Tenpenny, review her findings, and complete his independent research." *Id.* at 4.

## IV. The Special Master's Reasonable Expert Costs Determination

The special master reviewed Dr. Tenpenny's invoice that was submitted as part of petitioner's initial application for attorneys' fees and costs and found that the invoice was deficient because it was not a "detailed invoice[ ] created contemporaneously." Fees Opin. at 5. The special master also noted that petitioner's description of the type of work performed by Dr. Tenpenny evolved over time. *Id.* Because of the confusing nature of the invoice and subsequent, varying explanations by Ms. Morse, as well as the lack of detail in the invoice, the special master concluded that petitioner had not met her burden of showing that Dr. Tenpenny's billed costs were reasonable. The special master nonetheless estimated that "[a] reasonable number of hours for Dr. Tenpenny's activities is 13 hours." *Id.* at 6. The special master found that an additional work hour would be reasonable for one telephone conversation with counsel and the review of one relevant article. Thus, the special master awarded

petitioner costs for fourteen hours of work performed by Dr. Tenpenny.

The special master stated that Dr. Morgan's invoice also lacked detail as to work hours per task and the date when each task was performed. In particular, the special master noted that Dr. Morgan's invoice did not confirm (or refute) petitioner's claim that Dr. Tenpenny's work was reviewed by Dr. Morgan and that her efforts streamlined his tasks. The special master concluded that, despite the lack of detail in the invoice, the hours billed by Dr. Morgan and his billing rate were reasonable. The special master expressed reservations concerning petitioner's decision to engage Dr. Tenpenny, in addition to Dr. Morgan, but judged that the adjusted costs of Dr. Tenpenny and the requested costs of Dr. Morgan were reasonable for this type of case. Thus, the special master awarded Ms. Morse $4550 for Dr. Tenpenny's services (fourteen work hours at $325 per hour) and $1756.85 for Dr. Morgan's services (five work hours at $350 per hour).[3] In all, the special master reduced petitioner's award of costs from the requested $17,972.45 to $7,999.95. All of the almost $10,000 reduction in requested costs is derived from the special master's determination of the reasonable costs of Dr. Tenpenny's services.[4]

## DISCUSSION

### I. Standard of Review

This court has jurisdiction to review the decisions of a special master in a Vaccine Act case. 42 U.S.C. § 300aa–12(e)(2). As defined by Vaccine Rule 13(b) of the Rules of the United States Court of Federal Claims (RCFC), an award of attorneys' fees and costs is "a separate decision" subject to review by one of the judges of this court. "Under the Vaccine Act, the Court of Federal Claims reviews the decision of the special master to determine if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]' " *de Bazan v. Sec'y*

---

3. Dr. Morgan's invoice was in the amount of $1750. The special master's addition of $6.85 is for a package delivery cost related to Dr. Morgan's services. Pet'r Fees Appl. Tab A at 50.

4. The special master noted the third line item in Dr. Tenpenny's invoice, $60 for the purchase of an article, but did not discuss this $60 line item in the section of the fees opinion setting forth the special master's determination of the reasonable costs of Dr. Tenpenny's services.

*of Health & Human Servs.,* 539 F.3d 1347, 1350 (Fed.Cir.2008) (quoting 42 U.S.C. § 300aa–12(e)(2)(B) and citing *Althen v. Sec'y of Health & Human Servs.,* 418 F.3d 1274, 1277 (Fed.Cir.2005)) (alteration in original).

■ This court uses three distinct standards of review in Vaccine Act cases, depending upon which aspect of a special master's judgment is under scrutiny:

These standards vary in application as well as degree of deference. Each standard applies to a different aspect of the judgment. Fact findings are reviewed ... under the arbitrary and capricious standard; legal questions under the "not in accordance with law" standard; and discretionary rulings under the abuse of discretion standard.

*Munn v. Sec'y of Dep't of Health & Human Servs.,* 970 F.2d 863, 870 n. 10 (Fed.Cir.1992).

■ The special master's determination of reasonable attorneys' fees and costs in a Vaccine Act case is a discretionary ruling that is entitled to deference from this court. *See, e.g., Saxton ex rel. Saxton v. Sec'y of Dep't of Health & Human Servs.,* 3 F.3d 1517, 1521 (Fed.Cir.1993) (stating that "fee determinations are within the discretion of a trial forum and are entitled to deference") (citations omitted); *Wasson by Wasson v. Sec'y of Dep't of Health & Human Servs.,* 24 Cl.Ct. 482, 483 (1991) ("A request for attorneys' fees and expenses should not result in another extensive proceeding, and the special master is given reasonably broad discretion when calculating such awards." (citing *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983))), *aff'd,* 988 F.2d 131, 1993 WL 18492 (Fed.Cir.1993) (table). The special master is tasked with deciding whether "the hours spent [by an expert] on the case were reasonable." *Wilcox v. Sec'y of Dept. of Health & Human Servs.,* No. 90–991V, 1997 WL 101572, at *4 (Fed.Cl. Feb. 14, 1997). "The special master is afforded wide discretion in determining the reasonableness of costs, as well as attorneys' fees." *Perreira v. Sec'y of Dept. of Health & Human Servs.,* 27 Fed.Cl. 29, 34 (1992), *aff'd,* 33 F.3d 1375 (Fed.Cir.1994).

■ When considering a request for attorneys' fees and costs, an expert's billed costs should be reduced from the amount requested when the expert's billed hours are excessive in the context of the issues being litigated. *See, e.g., Hensley,* 461 U.S. at 434, 103 S.Ct. 1933 ("Counsel for the [requesting] party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission."); *Kantor ex rel. Kantor v. Sec'y of Dept. of Health & Human Servs.,* No. 01–679V, 2007 WL 1032378, at *2 (Fed.Cl.Spec.Mstr. Mar. 21, 2007) ("As with attorneys' fees, time expended by medical experts should be reasonably allocated." (citing *Crossett v. Sec'y of Dept. of Health & Human Servs.,* No. 89–73V, 1990 WL 293878, at *4 (Cl.Ct. Aug. 3, 1990))); *Hines ex rel. Sevier v. Sec'y of Dep't of Health & Human Servs.,* 22 Cl.Ct. 750, 754 (1991) ("The special master is within his discretion in reducing hours that are duplicative, padded, spent on unrelated matters, or not 'reasonably expended.'" (quoting *Griffin & Dickson v. United States,* 21 Cl.Ct. 1, 11 (1990))). Petitioner bears the burden of proving that her expert costs are reasonable. *E.g., Preseault v. United States,* 52 Fed.Cl. 667, 670 (2002) (citations omitted); *Kantor,* 2007 WL 1032378, at *2 ("Finally, as purveyor of the burden of proof, Petitioner bears the burden of substantiating an expert's hours and the rate requested." (citing *Kuperus v. Sec'y of Dept. of Health & Human Servs.,* No. 01–60V, 2006 WL 3499516, at *4 (Fed.Cl. Spec.Mstr. Nov. 17, 2006))). Although a special master may allow a petitioner to supplement an inadequate attorneys' fees and costs application, "it remains counsel's responsibility to submit proof sufficient to support the point in issue." *Saunders v. Sec'y of Dept. of Health & Human Servs.,* 26 Cl.Ct. 1221, 1226 (1992), *aff'd,* 25 F.3d 1031 (Fed.Cir.1994); *see also Savin ex rel. Savin v. Sec'y of Health & Human Servs.,* 85 Fed.Cl. 313, 317 (2008) (stating that "the request for fees must be complete when submitted") (internal quotations and citation omitted).

The special master may rely on his or her experience with Vaccine Act cases in determining a reasonable attorneys' fees and costs award. *See, e.g., Saxton*, 3 F.3d at 1521 ("Vaccine program special masters are also entitled to use their prior experience in reviewing fee applications.") (citations omitted). The special master must, however, provide sufficient detail and analysis to support his or her reduction of a petitioner's requested award of costs. *See, e.g., Guy v. Sec'y of Health & Human Servs.*, 38 Fed.Cl. 403, 405 (1997) ("The special master ... must support a decision [on attorneys' fees and costs] with sufficient findings and adequate legal analysis, so that the reviewing court is able to determine if there was an abuse of discretion." (citing *Wasson*, 24 Cl. Ct. at 483)). "To overturn a discretionary ruling of a [fact finder], the appellant must establish that the ruling is based upon clearly erroneous findings of fact or a misapplication or misinterpretation of applicable law or that the ruling evidences a clear error of judgment on the part of the ... court." *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 876 (Fed.Cir.1988) (en banc in relevant part) (internal quotations and citation omitted).

## II. Petitioner's Allegations of Error

Petitioner raises three challenges to the special master's attorneys' fees and costs award, all focused on the determination of reasonable costs for Dr. Tenpenny's services. First, Ms. Morse asserts that Dr. Tenpenny's invoice comported with Vaccine Act guidelines and norms, and that the special master abused his discretion by rejecting that invoice as deficient. Second, petitioner contends that the special master abused his discretion when he determined that only thirteen hours were required for Dr. Tenpenny's review of Ms. Morse's medical records. Third, Ms. Morse argues that the special master abused his discretion when he trivialized or ignored evidence of the volume and complexity of the work performed by Dr. Tenpenny. The court addresses each of these arguments in turn.

## A. Dr. Tenpenny's Invoice

Petitioner states that "[r]equiring detailed, contemporaneous time records of medical *experts* ... is not—and never has been—standard practice in the Vaccine Program." Pet'r Mot. at 8. The special master, relying in part on guidelines provided practitioners by the United States Court of Federal Claims Office of Special Masters, faulted Dr. Tenpenny's invoice because it did not include a breakdown of hours per task, or dates she worked on Ms. Morse's claim, and because it was not created until the end of the ten-month period during which her services were performed. Fees Opin. at 5 & n.1. The guidelines cited by the special master do not clearly indicate the level of detail required in the invoices of medical experts. These guidelines do state, however, that costs must be explained:

> Such expenses, if not self-explanatory, should be explained sufficiently to demonstrate their relation to the prosecution of the petition.

United States Court of Federal Claims Office of Special Masters, Guidelines for Practice under the National Vaccine Injury Compensation Program § XIV(A)(4), at http://www.uscfc.uscourts.gov/vaccine-programoffice-special-masters (last visited Oct. 16, 2009).

If the special master had relied only on an extremely rigorous and, perhaps, unreasonable interpretation of the guidelines provided to practitioners in Vaccine Act cases, the court might agree with petitioner that the special master "has punished the petitioner for failing to follow a non-existent rule." Pet'r Mot. at 9. The special master, however, after reviewing an invoice containing three line items set forth in only three lines, concluded that Dr. Tenpenny's invoice was deficient and a clear example of how a more detailed invoice "facilitates an understanding of the expert's work." Fees Opin. at 5. The special master was especially troubled by the line item of 43.5 work hours for "Expert Witness testimony: Review of records, medical literature, draft report and discussion with [counsel]." Pet'r Fees Appl. Tab B at 22. After petitioner's counsel presented conflicting explanations of Dr. Tenpenny's invoice over the course of several months, the

special master was not convinced that Dr. Tenpenny reasonably spent forty hours reviewing medical records, plus 4.5 hours reading one article and communicating with counsel for petitioner, as petitioner's final clarification of Dr. Tenpenny's invoice indicated. Fees Opin. at 6. The court agrees with the special master that Dr. Tenpenny's invoice was deficient, in that it did not adequately explain why or how 44.5 work hours were reasonably spent on the tasks listed on the invoice.

The court also agrees that petitioner's subsequent efforts to explain Dr. Tenpenny's invoice did not cure the defect in the invoice. Even considering the clarifications provided by counsel, the special master did not abuse his discretion in rejecting the record before him as inadequate justification for the 44.5 hours of medical expert services provided by Dr. Tenpenny. The court agrees that the evidence before the special master was not persuasive as to the reasonableness of Dr. Tenpenny's billed hours. *See Wilcox,* 1997 WL 101572, at *4 (stating that "a clear and complete picture must be painted to enable the court to see and understand how and why the expert spent the claimed hours"). When confronted with a deficient record of costs provided by Ms. Morse, the special master properly relied on his experience and estimated a reasonable number of hours for Dr. Tenpenny's services. *See, e.g., Rodriguez ex. rel. Rodriguez v. Sec'y of Dep't of Health & Human Servs.,* No. 06–559V, 2009 WL 2568468, at *22 (Fed.Cl.Spec.Mstr. July 27, 2009) (rejecting an inadequately detailed invoice and estimating reasonable expert witness costs); *Sabella v. Sec'y of Dep't of Health & Human Servs.,* 86 Fed.Cl. 201, 223 (2009) ("Where petitioner has failed to provide adequate documentation to support the costs petitioner claimed, the court finds no abuse of discretion in the special master's determination [of the number of expert work hours typically required for the tasks performed].").

## B. The Thirteen Work Hours Estimate

Petitioner suggests that the records in this case were "extraordinarily complex and extensive." Pet'r Mot. at 10. Petitioner also reports that her symptoms "mystified" her treating physicians, and that Dr. Tenpenny's analysis of Ms. Morse's records required an amount of time "higher than usual in Vaccine Program cases." *Id.* at 12–13. Petitioner argues that forty hours, not thirteen hours, were reasonable for Dr. Tenpenny's review of Ms. Morse's medical records.

The special master relied on his experience with other Vaccine Program cases to estimate a reasonable number of work hours for the review of Ms. Morse's medical records. The United States Court of Appeals for the Federal Circuit has endorsed this practice. *Saxton,* 3 F.3d at 1521–22. The special master conceded that Ms. Morse's records include "reports from many doctors," but reasoned that a review of those records should have focused on events in temporal proximity to her hepatitis B vaccination. Fees Opin. at 7. The special master concluded that "[a] reasonable, if conservative, number of hours for reviewing Ms. Morse's medical records and simultaneously preparing a chronology is 13 hours." *Id.*

Petitioner did not cite to a single decision of this court or the Federal Circuit wherein forty hours, or any number of hours close to forty hours, was held to be a reasonable number of work hours for the review and analysis of medical records in a Vaccine Act case. The special master explained his estimate of thirteen hours, and relied upon his experience with Vaccine Act cases. Petitioner has not shown that the special master's estimate was the product of erroneous fact finding, misinterpretation of law, or error of judgment. *Kingsdown Medical,* 863 F.2d at 876. The court sees no abuse of discretion in the special master's estimate of thirteen hours, or in his overall conclusion that the reasonable cost for Dr. Tenpenny's services was $4550.

## C. Dr. Tenpenny's Case Notes

Finally, petitioner argues that the special master misjudged the value of Dr. Tenpenny's services because he failed to consider all of the evidence submitted by petitioner. In particular, petitioner points to three pages attached to Ms. Morse's attorneys' fees and costs application, wherein Dr. Tenpenny pro-

vides a list of bulleted items under the headings "problems" and "favor," which petitioner characterizes as a "document advising counsel and Dr. Morgan of the strengths and weaknesses of [Ms. Morse's] case." Pet'r Mot. at 15. These three pages bore no distinct title, but were three of nine pages in Tab D, titled "Case Notes from Dr. Sherri Tenpenny during expert review of medical records." *See* Pet'r Fees Appl. Tab D at 1–3. The other six pages in Dr. Tenpenny's case notes are a chronology extracted from Ms. Morse's medical history. *Id.* Tab D at 4–9. Petitioner suggests that the six-page summary of Ms. Morse's medical records, the three-page "problems" and "favor" document, as well as the 1660 pages of medical records, "demonstrate[d] to the special master the nature, extent, and quality of the services performed by Dr. Tenpenny." Pet'r Mot. at 15.

The special master did not specifically mention the untitled three-page "problems" and "favor" document in his estimate of a reasonable number of work hours for Dr. Tenpenny. The special master noted that Dr. Tenpenny's invoice and communications with counsel had produced confusion and misunderstanding as to the tasks she had completed and the allocation of the 44.5 work hours she claimed to have devoted to this case. Fees Opin. at 6. The special master also noted that either Dr. Tenpenny had not written a report of her findings, or, if she had, her report had not been filed to substantiate her work hours. *Id.* Instead, the special master referred to "a six-page chronology of medical records" in the record before him. *Id.* In reference to Dr. Morgan's services, the special master also noted that petitioner "asserted that Dr. Tenpenny provided her summary to Dr. Morgan and that Dr. Tenpenny's summary permitted Dr. Morgan to work more quickly." *Id.* at 8. Upon this record, the special master concluded that "a reasonable amount of time for all Dr. Tenpenny's work in this case is 14 hours." *Id.* at 7.

The special master devoted much of his discussion of Dr. Tenpenny's work to his consideration of petitioner's clarification of Dr. Tenpenny's invoice. This clarification attempted to justify forty of the billed hours by dividing 1660 pages of Ms. Morse's medical records by a reviewing rate of 27.5 pages per hour. Pet'r April 14, 2009 Clarification at 3. The special master was not persuaded that this methodology produced a reliable estimate of the reasonable hours of expert services provided by Dr. Tenpenny.

■■■ Upon review of the record, the court finds that the special master did not abuse his discretion in his analysis of the evidence before him justifying Dr. Tenpenny's work hours. Dr. Tenpenny's invoice presented in a single line item a charge for 43.5 undifferentiated work hours, described as "Expert Witness testimony: Review of records, medical literature, draft report and discussion with [counsel]." Pet'r Fees Appl. Tab B at 22. Petitioner then presented conflicting reports to the special master of Dr. Tenpenny's tasks. In the end, petitioner supported her attorneys' fees and costs application with a clarification that identified forty work hours for medical records review, and 4.5 work hours for reading an article and discussions with counsel. Pet'r April 4, 2009 Clarification at 3. No specific mention of the three-page "problems" and "favor" document is made in petitioner's clarification, and no hours are attributed solely to the production of this document.

In the special master's opinion, as in petitioner's final clarification of Dr. Tenpenny's invoice, the analysis of the hours reasonably required for Dr. Tenpenny's services is set forth without specifically mentioning the "problems" and "favor" document, an untitled document whose significance is not immediately apparent to the reader. If the three-page "problems" and "favor" document had great significance in Ms. Morse's application for attorneys' fees and costs, petitioner bore the burden of pointing this out to the special master, because petitioner bears the burden of proving that her requested costs are reasonable. *E.g., Preseault,* 52 Fed.Cl. at 670 (citations omitted); *Kantor,* 2007 WL 1032378, at *2 ("Finally, as purveyor of the burden of proof, Petitioner bears the burden of substantiating an expert's hours and the rate requested.") (citation omitted). The special master determined, after allowing pe-

titioner extensive opportunities to explain Dr. Tenpenny's invoice, that "[a] reasonable, if conservative, number of hours for reviewing Ms. Morse's medical records and simultaneously preparing a chronology is 13 hours." Fees Opin. at 7. The special master provided adequate legal analysis of the record before him, and his opinion does not reflect that he either ignored or trivialized evidence. *See Guy*, 38 Fed.Cl. at 405 ("The special master ... must support a decision [on attorneys' fees and costs] with sufficient findings and adequate legal analysis, so that the reviewing court is able to determine if there was an abuse of discretion.") (citation omitted). On this record, petitioner has not shown that the fact finding of the special master was clearly erroneous, or that he abused his discretion in awarding petitioner $4550 for the reasonable cost of Dr. Tenpenny's services.

### III. Remand

Petitioner requests that "her case be remanded to the special master for an assessment of appropriate attorneys' fees for her motion for review." Pet'r Mot. at 16. The Vaccine Rules of this court allow for such a remand after the court has reviewed a special master's decision on fees and costs, without regard for the merit or success of petitioner's motion for review: "Following review by an assigned judge of a special master's decision on attorney's fees and costs under Vaccine Rule 13, a request for any additional fees and costs relating to such review may be decided either by the assigned judge or by the special master on remand." RCFC Vaccine Rule 34(b). The court therefore remands this case to the special master for consideration of petitioner's request for attorneys' fees and costs related to the filing of her motion for review.

### CONCLUSION

For all of the above reasons, the court holds that the special master's attorneys' fees

and costs award to petitioner was not an abuse of his discretion.

Accordingly, it is hereby **ORDERED** that

(1) Petitioner's Motion for Review, filed on July 6, 2009, is **DENIED;**

(2) The decision of the special master is **AFFIRMED;**

(3) The Clerk's office is directed to **ENTER** judgment in accordance with the special master's decision of June 5, 2009;

(4) Pursuant to RCFC Vaccine Rule 34(b), this case is **REMANDED** to Special Master Christian J. Moran for consideration of petitioner's request for additional attorneys' fees and costs related to the filing of her motion for review; and

(5) The parties shall separately **FILE** any proposed redactions to this opinion, with the text to be redacted clearly marked out or otherwise indicated in brackets, on or before **November 6, 2009.**