# In the United States Court of Federal Claims

No. 07-443 V

(Filed July 18, 2013)[1]

**PUBLISHED**

```
* * * * * * * * * * * * * * * *    *
JOAN CAVES,                         *
                                    *
           Petitioner,              *    National Childhood Vaccine
                                    *    Injury Act of 1986, 42 U.S.C.
      v.                            *    §§ 300aa-1 to -34 (2006);
                                    *    Review of Special Master's
SECRETARY OF DEPARTMENT OF          *    Determination of Reasonable
HEALTH AND HUMAN SERVICES,          *    Costs; Expert Costs.
                                    *
           Respondent.              *
                                    *
* * * * * * * * * * * * * * * *  *  *
```

*Ronald C. Homer*, Boston, MA, for petitioner.

*Michael P. Milmoe*, United States Department of Justice, with whom were *Stuart F. Delery*, Principal Deputy Assistant Attorney General, *Rupa Bhattacharyya*, Director, *Vincent J. Matanoski*, Deputy Director, and *Catharine E. Reeves*, Assistant Director, Washington, DC, for respondent.

---

**OPINION AND ORDER**

---

[1]/ Pursuant to Rule 18(b) of Appendix B of the Rules of the United States Court of Federal Claims, this Opinion and Order was initially filed under seal on June 12, 2013. Pursuant to ¶ 4 of the ordering language, the parties were to propose redactions of the information contained therein on or before June 28, 2013. No proposed redactions were submitted to the court. Thus, with the exception of the publication date and this footnote, the sealed and public versions of this opinion are identical.

**Bush**, *Judge*.

On June 28, 2007, petitioner Joan Caves filed a claim for compensation under the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa-1 to -34 (2006) (the Vaccine Act). On November 29, 2010, the special master denied her petition, and this court subsequently affirmed that decision on May 18, 2011. *See Caves v. Sec'y of Health & Human Servs.*, 100 Fed. Cl. 119 (2011), *aff'd*, 463 Fed. App'x 932 (Fed. Cir. 2012). Here, Mrs. Caves seeks review of the special master's decision to reduce the expert costs she has requested in this case. *See Caves v. Sec'y of Health & Human Servs.*, No. 07-443V, 2012 WL 6951286 (Fed. Cl. Spec. Mstr. Dec. 20, 2012). For the reasons stated below, the court affirms the special master's decision.

## BACKGROUND

### I. Entitlement Proceedings

In November 2005, Mrs. Caves received her annual influenza vaccination. Approximately three weeks later, Mrs. Caves developed transverse myelitis (TM), an inflammatory demyelinating disorder of the central nervous system. Mrs. Caves filed a petition under the Vaccine Act on June 28, 2007, alleging that the influenza vaccine caused her to develop TM. In November 2010, the special master issued a decision holding that Mrs. Caves was not entitled to compensation under the Vaccine Act because she had failed to meet her burden on the issue of causation. *See Caves v. Sec'y of Health & Human Servs.*, No. 07-443V, 2010 WL 5557542 (Fed. Cl. Spec. Mstr. Nov. 29, 2010). The special master's entitlement decision was affirmed by this court, *Caves*, 100 Fed. Cl. at 119, and by the United States Court of Appeals for the Federal Circuit, *Caves*, 463 Fed. App'x at 932.

### II. Motion for Attorneys' Fees and Costs

On July 27, 2012, Mrs. Caves filed a motion for attorneys' fees and costs in this case.[2] On September 7, 2012, respondent objected to certain of those fees and

---

[2]/ The Vaccine Act allows a special master to award a petitioner reasonable attorneys' fees and costs even when that petitioner was not awarded any

(continued...)

2

costs as unreasonable, and Mrs. Caves then filed a reply in support of her motion for attorneys' fees and costs on September 28, 2012. On the same day, Mrs. Caves filed a supplemental motion for attorneys' fees incurred in connection with the preparation of her motion requesting attorneys' fees and costs. In all, Mrs. Caves requested a total of $185,065.09 in attorneys' fees and costs.

Mrs. Caves requested a total of $138,514.10 in attorneys' fees, much of which respondent challenged as unnecessarily duplicative and thus unreasonable. Because the Vaccine Act permits the recovery of only *reasonable* attorneys' fees, *see* 42 U.S.C. § 300aa-15(e)(1), respondent argued that the fees requested by petitioner here must be either reduced or eliminated altogether to account for the inefficiency of petitioner's attorneys in prosecuting this case.

Mrs. Caves also requested $46,550.99 in costs, including $959.87 in costs incurred directly by petitioner. Many of those costs (*e.g.*, document reproduction) were not disputed by respondent. Three separate categories of costs, however, were challenged by respondent as unreasonable. First, respondent argued that $1200 spent to retain a life care planner for petitioner was unreasonable. Next, respondent asserted that certain costs incurred in connection with the presence of two attorneys at oral argument before the Federal Circuit were unreasonable. Finally, respondent argued that the costs attributable to Dr. Derek Smith, an expert witness retained by petitioner in this case, were excessive and thus unreasonable. Dr. Smith charged petitioner a total of $36,720.00, which included $35,560.00 for substantive work (at a rate of $400.00 per hour), and $1160.00 for time spent driving to and from the entitlement hearing (at a rate of $200.00 per hour).

In particular, respondent explained in her response that she

---

[2](...continued)
compensation for his or her injury, so long as the petition was brought in good faith and there was a reasonable basis for the claim. *See* 42 U.S.C. § 300aa-15(e)(1); *Shaw v. Sec'y of Health & Human Servs.*, 609 F.3d 1372, 1375 (Fed. Cir. 2010). Here, respondent did not contend that Mrs. Caves brought her petition in bad faith or that her petition did not have a reasonable basis. The special master, moreover, concluded that the petition was in fact brought in good faith and had a reasonable basis. *Caves*, 2012 WL 6951286, at *2 n.3.

3

> strenuously objects to the costs associated with petitioner's expert. . . . Dr. Smith charges for 88.9 hours of substantive time working on the case and 5.8 hours of travel time to attend the hearing. Respondent cannot fathom how Dr. Smith could have spent that much time on this case when his report was only two pages long, and was of a general nature. According to the transcript notations as to the beginning and ending times of the hearing, the entire proceeding lasted a little over six hours. Respondent suggests that, at a minimum, Dr. Smith's bill be reduced by half.

R's Resp. to Mot. for Fees at 12.[3] Not surprisingly, Mrs. Caves disagreed with that assessment, arguing that

> [t]he special master has had the opportunity to review the qualifications and observe the testimony of Dr. Smith at [the] hearing. He is an extremely qualified expert. In light of the complicated medical issues, and the medical literature reviewed, his time expended, hourly rate, and fees are reasonable.

P's Reply in Support of Mot. for Fees at 13 (footnote omitted).

On December 20, 2012, the special master awarded Mrs. Caves some of the attorneys' fees and costs she had requested in her initial and supplemental motions, but denied certain fees and costs as unreasonable. The attorneys' fees requested by petitioner, and the amounts actually awarded by the special master, are set forth below.

| Stage of Proceedings | Requested | Awarded | Reduction |
|---|---|---|---|
|  |  |  |  |

---

[3] In this opinion, documents filed by petitioner will be indicated with a "P" (*e.g.*, "P's Motion for Review," while documents filed by respondent will be indicated with an "R" (*e.g.*, "R's Response").

4

| | | | |
|---|---|---|---|
| Entitlement | $84,745.60 | $65,720.40 | $19,025.20 |
| Motion for Review | $10,935.00 | $3,910.00 | $7,025.00 |
| Federal Circuit Appeal | $39,323.10 | $16,700.00 | $22,623.10 |
| Motion for Fees and Costs | $3,510.40 | $3,510.40 | $0.00 |
| Total | $138,514.10 | $89,840.80 | $48,673.30 |

The special master reduced the total amount of attorneys' fees requested by petitioner by approximately thirty-five percent. Mrs. Caves does not challenge any portion of that reduction in her motion for review.

The special master awarded petitioner $1200.00 for the cost of her life care planner – the full amount requested in her motion. However, the special master reduced the costs incurred by one of petitioner's attorneys to attend oral argument by $1542.76. The special master also determined that Dr. Smith's requested compensation for services rendered was not adequately documented to demonstrate the reasonableness of the amount of time claimed by Dr. Smith. Accordingly, the special master estimated a reasonable number of hours for Dr. Smith's efforts and awarded petitioner costs for his services in the amount of $11,800.00 – a reduction of $24,920.00, or more than sixty-seven percent. The total reduction in substantive – *i.e.*, non-travel – time was more than seventy percent (from 88.9 hours to 26.6).

On January 10, 2013, Mrs. Caves filed a motion for reconsideration of the special master's decision and included with her motion a more detailed invoice for the work performed by Dr. Smith in this case. The special master denied that motion on January 18, 2013. In the motion for review now before the court, petitioner challenges only the reduction of costs incurred for Dr. Smith's services; none of the other reductions are disputed here.

## DISCUSSION

### I.     Standard of Review

This court has jurisdiction to review the decisions of a special master in a Vaccine Act case. 42 U.S.C. § 300aa-12(e)(2). As defined in Vaccine Rule 13(b) of the Rules of the United States Court of Federal Claims (RCFC), an award of

5

attorneys' fees and costs is "a separate decision" subject to review by one of the judges of this court. "Under the Vaccine Act, the Court of Federal Claims reviews the decision of the special master to determine if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" *de Bazan v. Sec'y of Health & Human Servs.*, 539 F.3d 1347, 1350 (Fed. Cir. 2008) (quoting 42 U.S.C. § 300aa-12(e)(2)(B) and citing *Althen v. Sec'y of Health & Human Servs.*, 418 F.3d 1274, 1277 (Fed. Cir. 2005)) (alteration in original).

This court uses three distinct standards of review in Vaccine Act cases, depending upon which aspect of a special master's judgment is under scrutiny:

> These standards vary in application as well as degree of deference. Each standard applies to a different aspect of the judgment. Fact findings are reviewed . . . under the arbitrary and capricious standard; legal questions under the "not in accordance with law" standard; and discretionary rulings under the abuse of discretion standard.

*Munn v. Sec'y of Health & Human Servs.*, 970 F.2d 863, 870 n.10 (Fed. Cir. 1992).

The special master's determination of reasonable attorneys' fees and costs in a Vaccine Act case is a discretionary ruling that is entitled to deference from this court. *See, e.g.*, *Saxton ex rel. Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (stating that "fee determinations are within the discretion of the trial forum and are entitled to deference") (citations omitted); *Wasson by Wasson v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 482, 483 (1991) ("A request for attorneys' fees and expenses should not result in another extensive proceeding, and the special master is given reasonably broad discretion when calculating such awards." (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983))), *aff'd*, 988 F.2d 131 (Fed. Cir. 1993) (table). The special master is tasked with deciding whether "the hours spent [by an expert] on the case were reasonable." *Wilcox v. Sec'y of Health & Human Servs.*, No. 90-991V, 1997 WL 101572, at *4 (Fed. Cl. Spec. Mstr. Feb. 14, 1997). "The special master is afforded wide discretion in determining the reasonableness of costs, as well as attorneys' fees." *Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (1992), *aff'd*, 33 F.3d 1375 (Fed. Cir. 1994).

When considering a request for attorneys' fees and costs, an expert's billed costs should be reduced from the amount requested when the expert's billed hours are excessive in the context of the issues being litigated. *See, e.g.*, *Hensley*, 461 U.S. at 434 ("Counsel for the [requesting] party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission."); *Kantor ex rel. Kantor v. Sec'y of Health & Human Servs.*, No. 01-679V, 2007 WL 1032378, at *2 (Fed. Cl. Spec. Mstr. Mar. 21, 2007) ("As with attorneys' fees, time expended by medical experts should be reasonably allocated." (citing *Crossett v. Sec'y of Health & Human Servs.*, No. 89-73V, 1990 WL 293878, at *4 (Cl. Ct. Spec. Mstr. Aug. 3, 1990))); *Hines ex rel. Sevier v. Sec'y of Health & Human Servs.*, 22 Cl. Ct. 750, 754 (1991) ("The special master is within his discretion in reducing hours that are duplicative, padded, spent on unrelated matters, or not 'reasonably expended.'" (quoting *Griffin & Dickson v. United States*, 21 Cl. Ct. 1, 11 (1990))). Petitioner bears the burden of proving that her expert costs are reasonable. *E.g.*, *Kantor*, 2007 WL 1032378, at *2 ("Finally, as purveyor of the burden of proof, Petitioner bears the burden of substantiating an expert's hours and the rate requested." (citing *Kuperus v. Sec'y of Health & Human Servs.*, No. 01-60V, 2006 WL 3499516, at *4 (Fed. Cl. Spec. Mstr. Nov. 17, 2006))); *Preseault v. United States*, 52 Fed. Cl. 667, 670 (2002) (citations omitted);. Although a special master may allow a petitioner to supplement an inadequate attorneys' fees and costs application, "it remains counsel's responsibility to submit proof sufficient to support the point in issue." *Saunders v. Sec'y of Health & Human Servs.*, 26 Cl. Ct. 1221, 1226 (1992), *aff'd*, 25 F.3d 1031 (Fed. Cir. 1994); *see also Savin ex rel. Savin v. Sec'y of Health & Human Servs.*, 85 Fed. Cl. 313, 317 (2008) (stating that "the request for fees must be complete when submitted") (internal quotations and citation omitted).

The special master may rely on his or her experience with Vaccine Act cases in determining a reasonable attorneys' fees and costs award. *See, e.g.*, *Saxton*, 3 F.3d at 1521 ("Vaccine program special masters are also entitled to use their prior experience in reviewing fee applications.") (citations omitted). The special master must, however, provide sufficient detail and analysis to support his or her reduction of a petitioner's requested award of costs. *See, e.g.*, *Guy v. Sec'y of Health & Human Servs.*, 38 Fed. Cl. 403, 405 (1997) ("The special master . . . must support a decision [on attorneys' fees and costs] with sufficient findings and

adequate legal analysis, so that the reviewing court is able to determine if there was an abuse of discretion." (citing *Wasson*, 24 Cl. Ct. at 483)). "To overturn a discretionary ruling of a [fact finder], the appellant must establish that the ruling is based upon clearly erroneous findings of fact or a misapplication or misinterpretation of applicable law or that the ruling evidences a clear error of judgment on the part of the . . . court." *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 876 (Fed. Cir. 1988) (*en banc* in relevant part) (internal quotations and citation omitted).

## II. Petitioner's Allegations of Error

In her motion for review, Mrs. Caves advances two principal arguments. First, she asserts that the special master's conclusion that Dr. Smith's invoice was deficient was arbitrary, capricious, and an abuse of discretion. Second, petitioner argues that the special master's determination of the number of hours reasonably expended by Dr. Smith was also arbitrary, capricious, and an abuse of discretion. The court concludes that the special master did not abuse his discretion in either regard.

### A. The Special Master Did Not Abuse His Discretion in Holding that Dr. Smith's Invoice Was Deficient

Dr. Smith claims to have spent 88.9 hours on substantive work on this matter and 5.8 hours driving to and from the hearing before the special master in this case.[4] The invoice Dr. Smith presented to petitioner allocates his time as follows:

---

[4] The special master held that the lack of specificity in Dr. Smith's invoice made it exceedingly difficult to evaluate the reasonableness of the services he rendered for petitioner. One example of the confusion created by that lack of specificity and the failure to record time contemporaneously is the entry for Dr. Smith's travel time. Dr. Smith charged petitioner $1160 for the 5.8 hours he spent "driving to and from Boston for the hearing" before the special master. P's Mot. for Fees Tab B at 23. While that amount has been neither disputed by respondent nor reduced by the special master, the court notes that petitioner's motion for fees and costs also sought reimbursement for a round-trip train ticket purchased for Dr. Smith to travel between New London, Connecticut, and Boston, Massachusetts, on

(continued...)

8

Jan-March/2009 – petitioner's exhibits 1 thru 28 and respondent's exhibits A and B (Dr. Safran's report and CV) review, epidemiology review and research, immunologic review, preliminary discussion with Ms Chin Caplan on March 30
53.3 hours

April/2009 – report formulation, preparation, edits
9.1 hours

Nov-Dec/2009 – Caves updated medical records as well as the expert reports and medical literature filed into evidence review, conference pre-hearing, additional articles reviewed and hearing prep, hearing on Dec 9, post hearing conference
26.5 hours

6/2009 – travel time for driving to and from Boston for the hearing.
5.8 hours

Total hours 88.9 @ $400/hr + 5.8 @ $200 = $36720 minus $500 retainer paid = $36220.00 now due.

P's Mot. for Fees Tab B at 23.

---

[4](...continued)
the day before the hearing, and from Boston back to New London on the day of the hearing. *See id.* Tab B at 21. Petitioner also sought reimbursement for the cost of parking Dr. Smith's car in a garage at the train station in New London. *See id.* Tab B at 20. Based on the documents submitted in support of the motion for fees and costs, it appears that Dr. Smith drove his car to the train station in New London, presumably from his home or office, and parked his car there, but actually traveled to and from Boston on a train. Accordingly, under these circumstances, the basis of the claim for nearly six hours of driving time is not clear. Detailed and contemporaneously created time sheets from Dr. Smith could have avoided or explained such inconsistencies, while serving to support his claim for services.

The special master found that Dr. Smith's hourly billing rates – $400 for substantive work and $200 for travel time – were reasonable, based on his qualifications and extensive experience. The special master further held, however, that the amount of time Dr. Smith asserts having spent on this case was unreasonable. In reaching that conclusion, the special master first explained that it was difficult to evaluate the reasonableness of the time Dr. Smith claimed to have spent on this case because the invoice he presented to petitioner for payment was not created contemporaneously with the work performed and was insufficiently detailed:

> Assessing the reasonableness of Dr. Smith's time is difficult. His invoice only has three entries to account for 88.9 hours he spent over the course of a year on Ms. Caves's case. . . . Dr. Smith's invoice would have been much more informative if he had explained how much time was spent on specific tasks and if the invoice were prepared on a daily (rather than monthly) basis.

*Caves*, 2012 WL 6951286, at *11.

The special master then stated that the published guidelines for the vaccine program require the creation of contemporaneous and detailed invoices. *See* Guidelines for Practice under the National Vaccine Injury Compensation Program, at 19 (Office of Special Masters, United States Court of Federal Claims, November 2004) (Vaccine Guidelines) (requiring that expenses or costs, "if not self-explanatory, should be explained sufficiently to demonstrate their relation to the prosecution of the petition").[5]

---

[5]/ With respect to attorneys' fees, the Vaccine Guidelines state that time records must be contemporaneously created and must "indicate the date and specific character of the service performed, the number of hours (or fraction thereof) expended for each service, and the name of the person providing such service." Vaccine Guidelines, at 19. Further, "[e]ach task should have its own line entry indicating the amount of time spent on the task [because] [s]everal tasks lumped together with one time entry frustrates the court's ability to assess the reasonableness of the request." *Id.* As defendant notes, the proposed guidelines

(continued...)

10

The special master further noted that "[w]ithout a contemporaneously created invoice that details Dr. Smith's activities, one reasonable result [would be] to deny Ms. Caves compensation in regard to Dr. Smith entirely [because she] could be viewed as having failed to meet her burden of proof." *Id.* at \*12 (citing *Naporano Iron & Metal Co. v. United States*, 825 F.2d 403, 404 (Fed. Cir. 1987); *Preseault*, 52 Fed. Cl. at 679; *Gardner-Cook v. Sec'y of Health & Human Servs.*, No. 99-480V, 2005 WL 6122520, at \*4 (Fed. Cl. Spec. Mstr. June 30, 2005)).

Rather than denying Mrs. Caves all compensation for Dr. Smith's costs, the special master instead determined that "[a]nother reasonable result is to estimate from the materials that were provided how much time the person spent." *Id.* Based on those materials, the special master concluded that "[a] reasonable number of hours for [Dr. Smith's] substantive activities is 26.6 hours," which "takes into account Dr. Smith's experience and familiarity with the literature arguably connecting the flu vaccine and demyelinating diseases." *Id.* (citations omitted). In the view of the special master, "[t]his much time (26.6 hours) is much more consistent with the time claimed by other experts of comparable skill on comparable cases." *Id.* (citation omitted).

Mrs. Caves argues, first, that the Vaccine Guidelines are not binding in this court, and, second, that Dr. Smith's invoice meets both the Vaccine Guidelines and any applicable standard of reasonableness. Regardless of whether a petitioner's costs are required to be documented in accordance with the Vaccine Guidelines, there is no question that a petitioner bears the burden of demonstrating that his or her claimed costs were in fact reasonable. *Saunders*, 26 Cl. Ct. at 1226. Here, the special master determined that Mrs. Caves failed to meet that burden, and the court concludes that the special master did not abuse his discretion in reaching that conclusion. *See Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 223

---

[5](...continued)
for practice in the vaccine program expressly require the same level of detail for expert invoices and for attorneys' bills. Those proposed guidelines are available on the court's website. *See* Proposed Guidelines for Practice under the National Vaccine Injury Compensation Program (Office of Special Masters, United States Court of Federal Claims), http://www.uscfc.uscourts.gov/proposed-revisions-guidelines-practice-under-national-vaccine-injury-compensation-program (last visited June 5, 2013).

11

(2009) ("Where petitioner has failed to provide adequate documentation to support the costs petitioner claimed, the court finds no abuse of discretion in the special master's determination [of the number of expert work hours typically required for the tasks performed].").

The special masters have also explained that petitioners and attorneys in Vaccine Act cases "must monitor the expert's overall fees to ensure that the fees remain reasonable." *Riggins v. Sec'y of Health & Human Servs.*, No. 99-382V, 2009 WL 3319818, at *5 (Fed. Cl. Spec. Mstr. June 15, 2009) (citations omitted). Unless expert witnesses create their detailed time sheets contemporaneously, petitioners and their attorneys are unable to monitor the work of those experts and ensure that the work they perform is both necessary and reasonable. In this case, Dr. Smith began rendering services for petitioner in January 2009, but the invoice for those services contained in the record before the court is dated June 18, 2010 – approximately eighteen months after he became involved in her case and six months after he concluded that involvement.

In *Morse v. Sec'y of Health & Human Servs.*, 89 Fed. Cl. 683 (2009), this court affirmed the special master's decision to reduce the expert costs requested by the petitioner in that case because her expert's invoice was not contemporaneously created and was insufficiently detailed. There is no meaningful difference between the expert invoice in *Morse* and the invoice submitted by Dr. Smith in this case. Mrs. Caves argues that *Morse* is distinguishable because, in that case, the expert "documented her time in only two line items on the invoice." P's Mot. for Review at 9. Here, however, Dr. Smith described 88.9 hours of substantive work he performed over the course of a year in only three short entries. Further, the invoice at issue in *Morse* included approximately one-half of the number of hours claimed in Dr. Smith's invoice. This court held that the special master in *Morse* – the same special master here – had not abused his discretion in reducing the expert costs requested in that case. Mrs. Caves has not advanced any persuasive reason for the court to reach a different result here.

Finally, the court notes that Mrs. Caves's contention that it was "unforeseeable" that the special master would require such detail in Dr. Smith's invoice is particularly unpersuasive in light of the fact that the petitioner in *Morse* was represented by the same law firm now representing Mrs. Caves in this case. Despite warnings from the special master and this court in *Morse*, it appears that

petitioner's counsel failed to inform Dr. Smith of the requisite level of detail for invoices submitted by experts in Vaccine Act cases. *See, e.g.*, *Morse v. Sec'y of Health & Human Servs.*, No. 05-418V, 2009 WL 1783639, at *3 (Fed. Cl. Spec. Mstr. June 5, 2009) ("As attorneys experienced in the Vaccine Program, Mr. Conway and Mr. Homer should have communicated these requirements to Dr. Tenpenny when they first retained her.").

## B.     The Special Master Did Not Abuse His Discretion in Determining the Number of Hours Reasonably Expended by Dr. Smith

Mrs. Caves further argues that the special master abused his discretion in concluding that 26.6 hours was a reasonable amount of time for Dr. Smith to have spent on this case. While this court may not have imposed the same level of reduction in hours as an initial matter, it cannot conclude that the special master's decision to do so was an abuse of his discretion.

First, as noted by the special master, the Vaccine Act limits recovery of attorneys' fees and costs to those that are reasonable, and it is petitioner's burden to demonstrate the reasonableness of those fees and costs. Mrs. Caves argues that the special master did not adequately explain and document his decision to award costs for only 26.6 hours of Dr. Smith's time. The special master carries no such burden; rather, petitioner carries the burden of demonstrating the reasonableness of the costs expended during the course of this litigation, and it would have been within the special master's discretion to deny all compensation for Dr. Smith's time due to petitioner's failure to meet that burden.[6] *See Naporano Iron & Metal*, 825 F.2d at 404-05 (denying attorneys' fees due to inadequate documentation, and rejecting the argument that a trial court has an obligation to reconstruct the proper number of reasonable attorneys' fees and costs from the available documentation).

Further, this court has recognized that the special master enjoys substantial discretion in determining the number of hours reasonably expended on a case by

---

[6]/ While petitioner attempts to impose a heightened burden on the special master, it is true that the special master must support his estimate with sufficient findings and legal analysis to allow a reviewing court to determine whether the estimate was in fact an abuse of discretion. *See Guy*, 38 Fed. Cl. at 405. The court concludes that the special master met that requirement in this case.

13

both attorneys and expert witnesses. *See, e.g.*, *Saxton*, 3 F.3d at 1521; *Perreira*, 27 Fed. Cl. at 34; *Wasson*, 24 Cl. Ct. at 483. This court will not, moreover, disturb the discretionary rulings of a special master unless the party challenging that ruling demonstrates that the ruling "is based upon clearly erroneous findings of fact or a misapplication or misinterpretation of applicable law or that the ruling evidences a clear error of judgment on the part of the [special master]." *Kingsdown Medical*, 863 F.2d at 876.

In reaching the figure of 26.6 hours, the special master first noted that Dr. Smith's participation in other similar cases "suggests that he should be efficient in his work on Ms. Caves's case." *Caves*, 2012 WL 6951286, at *11. Further, according to the special master, that estimated figure "takes into account Dr. Smith's experience and familiarity with the literature arguably connecting the flu vaccine and demyelinating diseases," and "is much more consistent with the time claimed by other experts of comparable skill on comparable cases." *Id.* (citations omitted). The Federal Circuit has explained that the special master may rely on his or her experience with Vaccine Act cases in determining a reasonable fees and costs award. *See Saxton*, 3 F.3d at 1521 ("Vaccine program special masters are also entitled to use their prior experience in reviewing fee applications.") (citations omitted).

Petitioner has not shown that the special master's estimate was the product of erroneous fact finding, misinterpretation of law, or error of judgment. *See Kingsdown Medical*, 863 F.2d at 876. In this case, Dr. Smith reviewed petitioner's medical records, reviewed relevant literature, prepared a short two-page report, and testified at a one-day hearing before the special master. The special master noted that Dr. Smith should have been efficient in this case given his education, experience, and participation in other similar cases, and he found that Dr. Smith's hourly rate of $400 was reasonable for that reason. Dr. Smith was proffered as an *expert* witness in this case, and he should have therefore been somewhat familiar with the literature on the possible connections between the influenza vaccine and TM. While that experience would not wholly obviate the need to perform some research and review recent developments in the literature, Dr. Smith should have required far less time for such activities than a non-expert in that particular area. The court discerns no abuse of discretion in the special master's estimate of 26.6 hours for the work performed by Dr. Smith in this case.

# CONCLUSION

For all of the above reasons, the court holds that the special master's decision to reduce the expert costs requested by petitioner was not an abuse of his discretion. Accordingly, it is hereby **ORDERED** that

(1) Petitioner's Motion for Review, filed on January 22, 2013, is **DENIED**;

(2) The decision of the special master is **AFFIRMED**;

(3) The Clerk's Office is directed to **ENTER** judgment in accordance with the special master's decision of December 20, 2012; and

(4) The parties shall separately **FILE** any proposed redactions to this opinion, with the text to be redacted clearly marked out or otherwise indicated in brackets, on or before **June 28, 2013**.

/s/Lynn J. Bush
LYNN J. BUSH
Judge

15