# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### E-filed: September 17, 2013

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

|  |  |  |
|---|---|---|
| ADAM SUCHER and | \* | PUBLISHED |
| ELIZABETH SUCHER, | \* | |
| parents of EVELYN SUCHER, | \* | No. 07-058V |
| a minor, | \* | |
|  | \* | Chief Special Master |
| Petitioners, | \* | Campbell-Smith |
|  | \* | |
| v. | \* | Attorneys' Fees and Costs; |
|  | \* | Guardianship Costs; |
| SECRETARY OF HEALTH | \* | Guardian Ad Litem |
| AND HUMAN SERVICES, | \* | |
|  | \* | |
| Respondent. | \* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Ronald C. Homer, Boston, MA, for petitioners.
Michael P. Milmoe, Washington, DC, for respondent.

## ATTORNEYS' FEES AND COSTS DECISION[1]

On January 24, 2007, Adam and Elizabeth Sucher filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §

---

[1]     Because this unpublished decision contains a reasoned explanation for the action in this case, I intend to post this decision on the United States Court of Federal Claims' website, in accordance with the E–Government Act of 2002, Pub.L. No. 107–347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2006)).  As provided by Vaccine Rule 18(b), each party has 14 days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy."  Vaccine Rule 18(b).  Otherwise, "the entire" decision will be available to the public.  Id.

300aa-10, <u>et seq.</u>[2] (the Vaccine Act or Program) on behalf of their daughter, Evelyn Sucher.

Pending before the undersigned is petitioners' final request for attorneys' fees and costs. Petitioners filed a total of three applications for attorneys' fees and costs for services provided by Ronald Homer as counsel in the Vaccine Program, Maura L. Sheehan as counsel in the state court guardianship proceeding and Mary H. Schmidt as guardian ad litem (GAL) in the state court guardianship proceeding. In total, petitioners now seek reimbursement for $129,554.78 in attorneys' fees and costs, of which $35,288.83 represents fees and costs for the two attorneys handling the state court guardianship proceeding, plus an additional $11,788.00 for the cost of a surety bond.

A summary of petitioners' three fee applications is set forth here.[3]

| | Conway, Homer & Chin-Caplan, P.C. | | Maura L. Sheehan, Esq. (guardianship attorney) | | Schmidt & Federico, P.C. (guardian ad litem) | | |
|---|---|---|---|---|---|---|---|
| Filing Date | Fees | Costs | Fees | Costs | Fees | Costs | TOTAL |
| 2/1/2012 | $47,135.90 | $28,893.01 | $14,793.75 | $12,833.99 | $0.00 | $0.00 | $103,656.65 |
| 3/12/2012 | $3,475.60 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $3,475.60 |
| 5/25/2012 | $2,967.80 | $5.64 | $3,213.75 | $5.00 | $16,147.50 | $82.84 | $22,422.53 |
| **TOTALS** | $53,579.30 | $28,898.65 | $18,007.50 | $12,838.99 | $16,147.50 | $82.84 | $129,554.78 |
| NOTES: Conway, Homer costs include the life planner cost of $27,322.50. Ms. Sheehan's costs include the approved surety bond cost of $11,788.00. | | | | | | | |

Respondent filed responses in opposition to each application. Petitioners filed a reply to the first response only. Briefing is complete on the issue of fees. The matter is now ripe for decision.

As discussed in greater detail below, the undersigned awards petitioners final attorneys' fees and costs of $93,954.39, allocated as follows:

---

[2]    National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2006).

[3]    Petitioners were reimbursed for their personal costs in January 2009, in accordance with General Order #9. Petitioners have requested no further personal costs in the pending fee requests.

**Conway, Homer & Chin-Caplan, P.C.**
Attorneys' Fees: $47,608.00
Costs: $28,898.65

**Maura L. Sheehan, Esq.**
Attorneys' Fees: $4,383.75
Costs: $12,838.99

**Schmidt & Federico, P.C.**
Attorneys' Fees: $225.00
Costs: $0

All other attorneys' fees and costs are denied.

The undersigned notes that Ms. Sheehan's billing records indicate that she has initiated efforts to recover attorney fees from the state court as well. In her billing entry for May 17, 2012, Ms. Sheehan recounts that she sent an email to Mr. Homer "detailing alternative filing option for fees in MA probate court under [state] statute." Third appl.,[4] Tab D, Inv. #2 at 2 (May 17, 2012 entry).

The Vaccine Act states that "[n]o attorney may charge any fee for services in connection with a petition filed under section 300aa-11 of this title which is in addition to any amount awarded as compensation by the special master or court under paragraph (1)." 42 U.S.C § 300aa-15(e)(3). In the event that either Ms. Sheehan or Ms. Schmidt seek payment for additional fees from Evelyn's estate, the conservator, Mr. Chris Milne, may wish to consider the reasons why the undersigned denied payment for certain fees.

Immediately upon issuance of this decision, Mr. Homer is directed to serve a confidential copy upon Mr. Milne, and to inform this court when he has done so.

## I. PROCEDURAL BACKGROUND

Provided for context is a review of this claim's procedural history. The entitlement phase of this matter spanned from January 24, 2007 through March 15, 2010—at which time an entitlement decision issued and the damages phase of the case

---

[4]     Petitioners' Second Supplemental Application for Final Attorneys' Fees, May 25, 2012, ECF No. 138 (Third appl.).

began.

A.      Entitlement Phase

On December 11, 2008, during the entitlement phase of the case, petitioners filed an unopposed motion for interim attorneys' fees and costs totaling $103,000.00, including $74,121.73 in attorneys' fees, $28,628.27 in attorneys' costs, and $250.00 in petitioners' costs. On January 13, 2009, the special master to whom the case was previously assigned issued a decision awarding the requested interim fees and costs. Judgment entered on January 21, 2009. The interim award of fees and costs addressed all work performed through the entitlement phase of the case.

On March 15, 2010, the same special master issued an entitlement ruling concluding that Evelyn's injuries merited Program compensation. This case was transferred to the undersigned on March 30, 2010.

B.      Damages Phase

The final fees for which petitioners now seek compensation pertain to the additional work performed during the damages phase of this matter. On April 21, 2010, nearly three weeks after the case's reassignment, the undersigned issued an order directing the parties to proceed to a damages determination. Petitioners subsequently filed 21 exhibits (Pet'rs' Ex. Nos. 47-68), including:

- updated records from the Boston Public Schools (Pet'rs' Ex. Nos. 47, 50, 53, 57 & 58);
- updated medical records (Pet'rs' Ex. Nos. 48, 49, 52, 56 & 63-65);
- health insurance information (Pet'rs' Ex. Nos. 51, 54, & 55);
- out-of-pocket expense reports (Pet'rs' Ex. Nos. 59, 61, 66 & 67);
- a life care plan assessed by Maureen Clancy RN, BSN, CLCP, (Pet'rs' Ex. No. 60);
- information provided by Dr. Laurie Douglass for the life care plan (Pet'rs' Ex. No. 62); and
- an affidavit from Evelyn's babysitter (Pet'rs' Ex. No. 68).

Petitioners' life care planner conducted home evaluations at Evelyn's home on April 14, 2010 and June 10, 2010. Petitioners' counsel attended both site visits. See Pet'rs' Ex. No. 60 at 2. Respondent's life care planner and counsel attended the second

evaluation.  See id.

The undersigned conducted telephonic status conferences on June 8, 2010 and June 22, 2010, addressing, first, the permitted activities of a life care planner during a planned site visit, see Order, June 17, 2010, ECF No. 72, and then the successful outcome of the site visit, see Order, June 22, 2010, ECF No. 76.

On July 20, 2010, petitioners filed a life care plan prepared by Maureen Clancy, RN, BSN, CLCP.  On September 14, 2010, respondent filed a nursing assessment and a life care plan assessment, both prepared by Laura E. Fox, MSN, RN.

As directed by the undersigned, the parties filed eight status reports between November 8, 2010 and June 24, 2011,[5] concerning their progress toward settlement and drawing attention to those issues requiring further consideration.

On July 11, 2011, respondent filed a proffer[6] on award of compensation detailing the amount of compensation appropriate for life care items, lost future earnings, pain and suffering, and past unreimbursable expenses.

Respondent's proffer addressed the issue of guardianship, stating:

No payments shall be made until petitioners provide respondent with documentation establishing that they have been appointed as the guardian(s)/conservator(s) of Evelyn Sucher's estate.  If petitioners are not authorized by a court of competent jurisdiction to serve as guardian(s)/conservator(s) of the estate of Evelyn Sucher, any such payment shall be made to the party or parties appointed by a court of competent jurisdiction to serve as guardian(s)/conservator(s) of the estate of Evelyn Sucher upon submission of written documentation of such appointment to the Secretary.

Proffer 4-5.

---

[5]     November 8, 2010, December 8, 2010, January 7, 2011, February 10, 2011, March 16, 2011, April 8, 2011, May 23, 2011 and June 24, 2011.

[6]     Respondent's Proffer on Award of Compensation 4-5, July 11, 2011, ECF No. 106 (Proffer).

On July 15, 2011, the undersigned issued a decision awarding damages, as set forth in respondent's proffer, including the provision that "[t]his [lump sum settlement] payment shall not be made until petitioners provide respondent with documentation establishing that they have been appointed as the guardian(s)/conservator(s) of Evelyn Sucher's estate." Decision Awarding Damages 2, July 15, 2011, ECF No. 108 (damages decision).

Petitioners elected not to seek review of the damages decision, and judgment entered on August 5, 2011.

C.      Vaccine Program Filings Related to State Court Guardianship
        Proceeding

Four months later, on December 2, 2011, petitioners filed a motion for cost of surety bond. Petitioners urged that the surety bond cost, $11,788, was necessary to establish guardianship for Evelyn in state court, and thus should be included in the award for attorneys' fees and costs. See Petitioners' Motion for Cost of Surety Bond ¶¶ 1-2, 5, ECF No. 113. The governing statute requires a surety bond for a conservator or temporary conservator. See Mass. Gen. Laws ch. 190B, § 5-410(a).

On January 6, 2012, petitioners filed a brief in support of their request, in which they reported that they had asked the state court to appoint Chris A. Milne, an attorney, to serve as the permanent conservator. See Pet'rs' Brief attach. A., ECF No. 117. Three days later, on January 9, 2012, petitioners filed an order issued by the Commonwealth of Massachusetts Suffolk County Probate and Family Court ("state court") appointing Mr. Milne as the temporary conservator for Evelyn's estate. See Pet'rs' Ex. 69 at 1.

On January 23, 2012, respondent filed her opposition to petitioners' request for payment of the cost of the surety bond. Petitioners filed a reply on January 30, 2012, attaching an affidavit from Mary H. Schmidt, an attorney, who opined that that the Massachusetts court was highly unlikely to allow the appointment of a third-party conservator without sureties on his bond, given the "magnitude" of the settlement in this matter. See Affidavit of Mary H. Schmidt ¶¶ 6,8, Jan. 26, 2012, ECF No. 122 attach. A (Schmidt aff.).

On March 2, 2012, the undersigned ruled that the cost of the surety bond

6

was reimbursable under the Vaccine Program.  See Order, ECF No. 126.

On March 12, 2012, petitioners filed a motion[7] for expedited ruling on their application for final fees and costs, requesting a ruling by April 2, 2012.  Petitioners represented that the state court would hold a hearing on April 3 to appoint a permanent conservator, see Mot. for ruling 1, and that issues surrounding the state court guardianship proceeding have "come to the forefront" in the dispute over costs, see id. 2.

On March 28, 2012, the undersigned issued an order granting petitioners' motion for resolution of the fees issue, but denying the request for a particular date for the ruling.

## II.   APPLICABLE LAW

The Vaccine Act requires an award of "reasonable attorneys' fees, and other costs, incurred in any proceeding on such petition" if petitioner prevails on a vaccine claim.  42 U.S.C. § 300aa-15(e)(1)(A)-(B).

Special masters are afforded wide discretion in determining the reasonableness of both attorneys' fees and incurred costs.  Morse v. Sec'y of Health & Human Servs., 89 Fed. Cl. 683, 687 (2009) (citation omitted).  A special master may rely on her personal experience with the Vaccine Program when making an award of fees and costs, but must provide sufficient detail and legal analysis to support any increase or reduction of the requested award.  See Morse, 89 Fed. Cl. at 688 (citations omitted).

In reviewing a fees and costs application, the special master need not engage in a line-by-line analysis of the application.  See Hocraffer v. Sec'y of Health & Human Servs., 99-533V, 2011 WL 6292218, at *13 (Fed. Cl. Nov. 22, 2011) (citing Fox v. Vice, 131 S. Ct. 2205, 2216 (2011)).

The Supreme Court has created a guiding principle in determining whether hours are reasonable: "[h]ours that are not properly billed to one's client are not properly billed to one's adversary pursuant to statutory authority."  Riggins v. Sec'y of Health & Human Servs., 99-382V, 406 Fed. Appx. 479, 481 (Fed. Cir. 2011) (citing Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)).

---

[7]      Pet'rs' Motion for Expedited Ruling on Petitioners' Application for Final Attorneys' Fees and Costs, Mar. 12, 2012, ECF No. 128 (Mot. for ruling).

A special master is not limited to considering only the portions of a fee petition that are disputed by the parties. A special master may independently "satisfy [her]self that the fee award is appropriate." Duncan v. Sec'y of Health & Human Servs., No. 99-455V, 2008 WL 4743493, at *1 (Fed. Cl. 2008). In making such a reduction, a special master is not required to provide petitioner with an opportunity to explain the unreasonable request, as the burden lies with petitioner in the first instance to provide an adequate description of and sufficient documentation for all requested costs and fees. See Sabella v. Sec'y of the Dept. of Health & Human Servs., 86 Fed. Cl. 201, 208-09 (2009); Duncan, 2008 WL 4743493, at *1.

The Federal Circuit has stated "[i]t was well within the special master's discretion to reduce the hours [expended in a matter] to a number that, in [her] experience and judgment, [is] reasonable for the work done." Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993).

To determine reasonable attorneys' fees, the Federal Circuit has traditionally employed the lodestar method, which involves "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." Blanchard v. Bergeron, 489 U.S. 87, 94 (1989) (citation omitted); Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1347-48 (Fed. Cir. 2008). Under this approach, a court must "exclude ... hours that were not 'reasonably expended,'" which would include hours that are "excessive, redundant, or otherwise unnecessary." Hensley, 461 U.S. at 434. Once a court makes that initial calculation, it may then make an upward or downward departure to the fee award based on other specific findings. See Blum v. Stenson, 465 U.S. 886, 888 (1984).

Special masters in recent Vaccine Program cases have interpreted the Vaccine Act's fee provision to include reimbursement for those fees and costs incurred in obtaining a guardianship in state court when the establishment of a guardianship is a condition of settlement that is incorporated into the issued decision.

Like any other fees and costs for which petitioners seek compensation the requested, fees and costs for a guardianship proceeding must be both necessary and reasonable. See Perreira ex rel. Perreira v. Sec'y of Health & Human Servs., 27 Fed. Cl. 29, 34 (1992) ("The conjunction 'and' conjoins both 'attorneys' fees' and 'other costs' and the word 'reasonable' necessarily modifies both. Not only must any request for reimbursement of attorneys' fees be reasonable, so also must any request for reimbursement of costs."), aff'd, 33 F.3d 1375 (Fed. Cir. 1994).

8

There is broad consensus in the Vaccine Program, as reflected in the decisions of the special masters, that <u>reasonable</u> fees and costs are compensable. <u>See</u> <u>Torres v. Sec'y of Health & Human Servs.</u>, No. 09–867V, 2013 WL 2256136, at *3 (Fed. Cl. Spec. Mstr. Apr. 30, 2013) (Special Master Millman); <u>Parmley v. Sec'y of Health & Human Servs.</u>, No. 09–698V, 2013 WL 1459709, at *1 (Fed. Cl. Spec. Mstr. Mar. 18, 2013) (Special Master Hamilton-Fieldman); <u>Myers v. Sec'y of Health & Human Servs.</u>, No. 11–434V, 2012 WL 6176474, at *2 (Fed. Cl. Spec. Mstr. Nov. 13, 2012) (Chief Special Master Campbell-Smith); <u>Kenney v. Sec'y of Health & Human Servs.</u>, No. 09–0738V, 2012 WL 6013214, at *2 (Fed. Cl. Spec. Mstr. Oct. 24, 2012) (Special Master Hastings); <u>Ramsey v. Sec'y of Health & Human Servs.</u>, No. 09–896V, 2012 WL 5205835, at *3 (Fed. Cl. Spec. Mstr. Sept. 24, 2012) (Special Master Vowell).

## III.   PETITIONERS' APPLICATIONS FOR FEES

Because petitioners prevailed on their vaccine claim, they are entitled to an award of attorneys' fees and costs. 42 U.S.C. § 300aa-15(e)(1)(A)-(B).

Petitioners filed their first final fee application[8] for $103,656.65, a second supplemental application[9] for $3,475.60, and a third supplemental application for $22,422.53.

As reflected in the billing records of both the guardianship attorneys and Mr. Homer, the parties' have vigorously disputed whether petitioners undertook efforts to establish a special needs trust.[10] This dispute has been exacerbated by petitioners' refusal to produce either the trust documents or the documents filed in the state court guardianship proceeding. With regard to the pending fee request, the most strenuously contested aspects involve the work performed by Ms. Sheehan and Ms. Schmidt in

---

[8]    Petitioner's Application for Final Attorneys' Fees and Costs, Feb. 1, 2012, ECF No. 123 (First appl.).

[9]    Petitioners' Supplemental Application for Final Attorneys' Fees, Mar. 12, 2012, ECF No. 127 (Second appl.).

[10]    According to respondent, the purpose of a special needs trust is to protect funds that are paid into the trust from being considered as either assets or income when determining Medicaid eligibility. <u>See</u> Resp't's Resp. to Pet'rs' Supp. App. for Final Fees & Costs 3, Mar. 29, 2012, ECF No. 131 (Second resp.).

9

connection with the state court guardianship proceeding. Accordingly, the undersigned addresses the fee requests of Ms. Sheehan and Ms. Schmidt first, and then considers Mr. Homer's fee request.

## A. The Trust Documents and State Court Filings

Between January 2012 and May 2012, petitioners and respondent engaged in a protracted dispute over whether petitioners endeavored to establish a special needs trustfor Evelyn, and whether petitioners would provide respondent with copies of the documents filed in the state court guardianship proceeding.

### 1. Background

Respondent objected to the establishment of any special needs trust. Respondent explained that she became suspicious of Ms. Sheehan's activities because she had billed almost $15,000 in fees, which "far exceeds what is normally requested," for attorneys' fees in a guardianship proceeding. First resp. 9. Respondent's mistrust intensified when neither of the Suchers was named as the conservator of their daughter's estate. See id.

Petitioners insisted that no such efforts were underway. But they declined to produce the trust documents, asserting that this court has no jurisdiction over what type of trust petitioners choose to establish and thus, respondent has no right to review the trust documents. See Pet'rs' Resp. to Resp't's Resp. to the Chief Special Master's Order of Dec. 21, 2011 at 8-9, ECF No. 122 (Pet'rs' Resp. to Dec. 21, 2011 Order).

On March 12, 2012, petitioners' responded[11] that Mr. Homer "ha[d] confirmed with the petitioners' probate attorney [Ms. Sheehan] that there has been no special needs trust-specific work done in this case." First reply 8. Respondent represented that she contacted petitioners after that March 12, 2012 filing to advise that the matter might resolve if she could review the trust documents created and determine what type of trust petitioners had sought to establish. If satisfied that petitioners were not creating a special needs trust, she would file no further pleadings challenging the fee request. See Second resp. 5 n.3. Again, petitioners declined to provide the trust documents of interest. See id.

On March 29, 2012, respondent argued that petitioners had failed to adequately

---

[11]    Pet'rs' Reply to Respondent's Response to Petitioners' Application for Final Fees and Costs 7, Mar. 12, 2012, ECF No. 129 (First reply).

10

address the special needs trust issue, and asked that either (1) petitioners produce copies of the trust documents, or (2) that Ms. Sheehan submit a sworn affidavit that no special needs trust work had been performed or contemplated in this matter. See id. Respondent pointedly questioned why, if petitioners had not established a special needs trust, they remained unwilling to allow a review of the trust documents, "especially when petitioners request[ed] reimbursement from the Vaccine Trust Fund for the preparation of these very documents." Id.

At the request of petitioners' counsel, the undersigned held a telephonic status conference on April 4, 2012 to address respondent's counsel's concerns that petitioners might have created a special needs trust. See Order 1, Apr. 5, 2012, ECF No. 132. Petitioners' counsel affirmed, as an officer of the court, "that no special needs trust exists in this case." Id. This simple answer, however, was approximately three months in the making.

Petitioners also refused to produce the documents filed in the state court, for which they have sought attorneys' fees and costs. Petitioners contend that respondent should not need to review all the documents to determine whether the fees are reasonable. Petitioners add that respondent's request to do so was overbroad and unreasonable. See Reply re April 5, 2012 Order 2.[12]

The undersigned directed petitioners to produce "those documents filed with the Massachusetts probate court to establish a conservatorship and/or guardianship." Order 2, Apr. 16, 2012, ECF No. 135. On May 2, 2012, petitioners filed the documents filed with the Commonwealth of Massachusetts probate court to establish a conservatorship and/or guardianship. See Pet'rs' Ex. 70.[13]

> 2. Respondent's Objections to Payment of Fees for Litigation of the Special Needs Trust Issue

Respondent objects to payment for a portion of the time petitioners spent

---

[12] Pet'rs' Reply to Resp't's Resp. to the Chief Special Master's Order of April 5, 2012, Apr. 13, 2012, ECF No. 134 (Reply re April 5, 2012 Order).

[13] Petitioners' exhibit 70 includes hand-numbered pages. All page references will be made to these page numbers, and not to the automatically affixed electronic case filing (ECF) page numbers.

responding to her requests for an answer about the special needs trust, and for all of the time petitioners spent refusing to provide respondent with the documents filed in state court.  See Second resp. 6; Third resp.[14] 3-4.

It is difficult to understand why petitioners' answer to respondent's circumscribed question required several months of negotiation between the parties—before the issue was addressed conclusively by a telephonic status conference conducted by the undersigned.

Shortly after March 12, 2012, respondent offered that if petitioners produced the trust documents and the documents were found to be as petitioners had represented, respondent would file no further objections to the pending fee applications.  See Second resp. 5 n.3.  The production of such documents would seem to have entailed only a modest effort by petitioners to copy, mark, scan and file one set of documents.  Yet, petitioners refused to produce the trust documents and declined to file them in this case.

Although respondent focused primarily on obtaining the trust documents, the explanation for Ms. Sheehan's inflated billing lies within the state court documents.  An examination of those documents revealed that Ms. Sheehan billed not for work on a special needs trust; but rather for more time expended on the preparation of motions, memoranda and affidavits than is typical—or necessary—in a guardianship proceeding.

Petitioners contend that state court guardianship fees are compensable under the Vaccine Program when respondent requires the establishment of a conservatorship or guardianship as a condition of payment of an award and thereby compels a state court proceeding "on" the petition filed under the Vaccine Act.  Motion for Cost of Surety Bond 1.  Yet petitioners objected to respondent's request to review the related state court documents.  This objection is inconsistent with petitioners' claim that the state court proceeding to establish guardianship is a proceeding on a vaccine petition for fees' purposes.  In the view of the undersigned, respondent's request to review the pertinent state court documents was not unreasonable.

The court and respondent are entitled to understand the work for which petitioners seek compensation in an application for fees.  Because petitioners' prolonged delay in producing the state court documents as requested in March 2012 was needlessly obstructive, petitioners will not be compensated for their work resisting this document

---

[14]  Respondent's Response to Petitioners' Second Supplemental Application for Final Fees and Costs, June 11, 2012, ECF No. 140 (Third resp.).

12

production after March 12, 2012.

    B.    Guardianship Proceeding

    The amount of attorneys' fees and costs incurred in connection with a guardianship/conservatorship proceeding must be reasonable.  42 U.S.C. § 300aa-15(e)(1)(A)-(B); Perreira, 27 Fed. Cl. at 34.

    Here, petitioners seek fees and costs for three attorneys who worked on the state court guardianship proceeding, specifically Mr. Homer,[15] Ms. Sheehan and Ms. Schmidt. The number of counsel involved in the guardianship proceeding is highly unusual and needlessly redundant.  While petitioners often hire a guardianship attorney in addition to their Vaccine Program attorney, it is uncommon for petitioners to hire two guardianship attorneys.

    Ms. Sheehan and Ms. Schmidt each worked on only the state court guardianship proceeding.  Together, they billed petitioners a total of $35,288.83, including $34,155.00 in fees and $1,133.83 in costs.  The previously approved cost of the surety bond, $11,788.00, is not included in the calculation of these amounts; it is an additional cost.

    A review of Vaccine Program attorneys' fees and cost applications over the last four years show payments attributable to state court guardianship proceeding ranging from $1,750 to $8,500, with the average cost of reimbursement at just over $4,000.  See Appendix A (listing 18 awards for guardianship fees and costs).  Petitioners' request here is approximately nine times greater than the average fees and costs request.  This significant disparity necessarily prompts a close scrutiny of the requested fees.

    In considering the pending applications for fees, the undersigned first considers whether each piece of work was necessary for the state court to appoint a conservator for Evelyn's estate.  Billing for work that is unnecessary is not reasonable.  See Hensley, 461 U.S. at 434.  If the undersigned is persuaded that the work was necessary, then the issue of whether the number of hours expended and the hourly rate requested were reasonable will be considered.

---

[15]    Mr. Homer was assisted primarily by Mr. Joseph Pepper of his firm, and occasionally by other attorneys.  For ease of reference, any work by the law firm Conway, Homer & Chin-Caplan, P.C. is attributed to Mr. Homer, the attorney of record.

13

The undersigned first reviews Ms. Schmidt's work as guardian ad litem and then Ms. Sheehan's work as guardianship attorney.

### 1. Ms. Schmidt's Work as Guardian Ad Litem

Mary H. Schmidt served as guardian ad litem in the state court proceeding, and billed petitioners a total of $16,230.34, including $16,147.50 in attorneys' fees and $82.84 in costs. See Third appl., Tab C.

As discussed below, there is no evidence in the record that the state court would have appointed a guardian ad litem absent petitioners' request. Nor is there any record evidence that Ms. Schmidt's appointment added any value to the state court proceeding. Much of the work performed as guardian ad litem was unnecessary and will not be compensated.

### a. Petitioners' Request for the State Court Appointment of a Guardian Ad Litem

In a proceeding involving the estate of a minor, the court may appoint a guardian ad litem upon request of a party. See Mass. Gen. Laws ch. 190B, § 1-404 (a) (providing that "the court . . . may, upon the representation of any party thereto or of any person interested, appoint a suitable person to appear and act therein as guardian ad litem or next friend of such minor.").

This statute governing the establishment of a conservatorship for a minor's estate does not require the appointment of a guardian ad litem; such appointment is wholly discretionary. See § 5-401(b). To that end, the probate court rules allow probate court judges to exercise their discretion to appoint a guardian ad litem in any case, unless such appointment is required by statute. See General Probate Court Rule 5. Thus, the state court was permitted, but not required, to appoint a guardian ad litem for Evelyn in the conservatorship matter.

Petitioners initiated their state court case by filing a petition for appointment of a conservator for Evelyn's estate on November 29, 2011, and on that same day, petitioners moved for the appointment of Ms. Schmidt as Evelyn's guardian ad litem.[16] See Pet'rs'

---

[16] Motion for Immediate Appointment of Specific Guardian Ad Litem to Approve Appointment of Conservator, filed Nov. 29, 2011, Pet'rs' Ex. 70 at 32-36.

14

Ex. 70 at 2 (Docket nos. 1 & 9), 32.  Petitioners asked that Ms. Schmidt "investigate the conditions and property to be protected" and "make appropriate recommendations to the Court."  Pet'rs' Ex. 70 at 32.

Petitioners did not disclose to the state court that a guardian ad litem was unnecessary in this case.  Rather, petitioners stated that

> [a]ppointment of a specific proposed Guardian Ad Litem, Mary H. Schmidt, Esq., is in the best interest of the minor where time is of the essence and Attorney Schmidt has both the requisite experience and knowledge relating to the Vaccine Act <u>and</u> Massachusetts probate law. . . .
>
> Attorney Schmidt has served with counsel on a similar Vaccine case in Suffolk County in 2002.[17]
>
> Attorney Schmidt has demonstrated [an] ability to swiftly provide the expertise required to proceed on two tracks (state probate law and federal vaccine program) and complete the case while providing the necessary protection of the property of a minor.
> . . .
>
> Petitioners request that in the event the court deems necessary to appoint a Guardian Ad Litem, that Mary H. Schmidt be appointed forthwith to assist the court in evaluation . . .  Petitioners request that the guardian ad litem specifically be appointed for the purpose of evaluating Petition to Appoint a Conservator, Verified Motion for Temporary Appointment or Motion to Approve the Settlement of a Minor, the Settlement, Appointment of Conservator and other related motions filed herewith as they pertain to the estate of their daughter Evelyn H. Sucher.

<u>Id.</u> at 34-35.

It remains unclear why petitioners sought the appointment of a guardian ad litem to represent Evelyn's interests in the conservatorship matter, when, as Ms. Schmidt correctly pointed out, her parents already had retained a "team of professionals to assist them."  <u>Id.</u> at 55.  Among those working with the Suchers were:

---

[17]     It is unknown to what case Ms. Sheehan is referring.

15

(1) counsel in the conservatorship matter, Ms. Sheehan,
(2) counsel in the Vaccine Program matter, Mr. Homer,
(3) financial planners to assist with the management of the settlement funds, and
(4) accountants.

See id. at 55.

The explanation for seeking the appointment of Ms. Schmidt as guardian ad litem, as set forth in Ms. Sheehan's affidavit, was wanting.[18] Ms. Sheehan averred that the "[a]ppointment of [a] GAL . . . has never been waived in any vaccine case I have ever processed." Nov. 28, 2011 Sheehan aff. ¶ 12. Ms. Sheehan effectively claimed that the appointment of a guardian ad litem is justified by a mere request.

This affidavit is not persuasive. First, Ms. Sheehan provided no citation for the 2002 Vaccine Program case(s) to which she referred. Nor did she indicate whether she—or Ms. Schmidt—had served as the guardian ad litem in that unspecified case.

Second, and more troubling, is the conflict between the circumstances to which Ms. Sheehan attested in the affidavit and the circumstances she described in her billing records. Ms. Sheehan explained in the affidavit that the reason the Suchers chose a third-party conservator for their daughter's estate—rather than designating Mr. Sucher (Evelyn's father)—was because Mr. Sucher intended to return to work as an attorney and Mrs. Sucher's health concerns militated against her designation. See id. ¶¶ 14-16.

But a close review of Ms. Sheehan's billing records provides a more complete factual account. Ms. Sheehan discovered on October 3, 2011, that Mr. Sucher had a "credit score deficiency." First appl., Tab C at 5. This finding prompted Ms. Sheehan to review his "ability . . . to serve" as conservator. Id. By October 26, 2011, Ms. Sheehan was communicating with Mr. Milne and preparing an affidavit for filing with the state court. Id. Ms. Sheehan also participated in a conference call with the surety bond company and Mr. Milne to persuade the surety bond company to issue [a] bond for a term of "less than 5 year[s] . . . to allow [the] Sucher[s] to take on Conservatorship when bondable and ready." Id. (emphasis added).

---

[18]    Affidavit of Maura L. Sheehan in Support of Temporary Appointment of Conservator, Nov. 28, 2011, ECF No. 137-1, Pet'rs' Ex. 70 at 14-17 (Nov. 28, 2011 Sheehan aff.).

16

The undersigned gleans from Ms. Sheehan's billing records that Mr. Sucher's inability to secure bonding due to his poor credit score rating prompted Ms. Sheehan to recruit Mr. Milne to serve as the conservator until Mr. Sucher could become bondable. But Ms. Sheehan failed to disclose this information to the state court.

Ms. Sheehan's lack of candor in her affidavit about the reason for seeking a third-party conservator compromises her credibility and calls into question the reliability of her representation that the appointment of a guardian ad litem has been required in vaccine cases she has handled. There is no evidence that the state court would have appointed a guardian ad litem in the Suchers' guardianship proceeding, absent petitioners' request.

### b. State Court's Appointment of, and Direction to, Ms. Schmidt as Guardian Ad Litem

Record review discloses that the work Ms. Schmidt performed was wholly unnecessary to the naming of a conservator for Evelyn's estate.

The state court issued an order on January 4, 2012 appointing Ms. Schmidt as guardian ad litem. See Pet'rs' Ex. 70 at 51. The order of appointment was a standard form with particular boxes checked, others unchecked, and certain directions crossed out. See id. The order indicated that Ms. Schmidt was to serve as "guardian ad litem/next friend for [Evelyn] to represent her interests in this conservatorship matter." Id. The state court directed that Ms. Schmidt's fees were to be paid by the "estate of the protected person," rather than by the state. Id. No provision was made in the Vaccine Program settlement for fees for a state court guardian ad litem. See Proffer, app. A at 1-6. There is no indication that the state court was aware that petitioners planned to seek payment from the Vaccine Program for the fees and costs of the guardian ad litem.

The state court did not assign the guardian ad litem any specific duties and as reflected in the order of appointment, did not require the guardian ad litem to either investigate, evaluate or report on any issues. See Pet'rs' Ex. 70 at 51. Nor did the state court direct Ms. Schmidt to prepare any report for the court's benefit; rather the court crossed out, in two separate places, the standard direction about preparing and mailing required reports to the court. See id. Yet, stunningly, Ms. Schmidt prepared unrequested work, and petitioners now seek compensation for that work.

17

c.      Ms. Schmidt's Guardian Ad Litem Report

Although not directed to do so, Ms. Schmidt filed a guardian ad litem report with the state court on March 29, 2012,[19] see id. at 2, and filed an amended report on April 2, 2012,[20] see id. at 52-62.  In her amended report, Ms. Schmidt claimed the state court had appointed her as guardian ad litem "in connection with a Petition for Leave to Compromise and Settle Minor's Action." Id. at 52.  She explained that the purpose of that petition was "to seek court approval of a settlement on behalf of Evelyn in a vaccine injury case." Id. at 52.  But the state court order made no mention of the petition for leave to compromise; it only addressed Ms. Schmidt's representation of Evelyn's interests in this conservatorship matter.  See id. at 51.

On November 29, 2011, petitioners filed for leave to compromise and settle the vaccine claim on Evelyn's behalf;[21] the same day on which they filed the petition for appointment of a conservator. The governing statute allows any party to request the state court's approval of the settlement of a claim that was not the subject of a suit in the state court (such as the Vaccine Program settlement), stating:

> Any party to a settlement of a claim of a minor or incompetent person, when such claim is not in suit, may initiate an action by filing a complaint and petition for settlement approval for the purpose of seeking the court's approval of the settlement under this section.

Mass. Gen. Laws ch. 231, § 140C 1/2 (emphasis added).

In briefing on the vaccine claim, petitioners acknowledged that the petition for leave to compromise filed under § 140C 1/2, was not necessary for the state court to

---

[19]      The original report is not in the record.  A March 30, 2012 billing entry by Ms. Sheehan indicated that the amended guardian ad litem report clarified that in response to respondent's concern petitioners were not establishing a Special Needs Trust.  See Third appl., Tab D, Inv. #1 at 1.

[20]      Amended Report of Mary H. Schmidt, Guardian Ad Litem, Dated April 2, 2012 ("amended report").

[21]      Petition for Leave to Compromise and Settle Minor's Action, Nov. 28, 2011, ECF No. 137-1 (Pet'rs' Ex. 70 at 20-31).

name a conservator for Evelyn's estate, but provided a less troublesome mechanism for the filing for conservatorship. See Pet'rs' Resp. to Dec. 21, 2011 Order 9. Because petitioners understood that asking the state court to approve the vaccine claim settlement would serve the same purpose as establishing a conservator for Evelyn's estate, it is unclear why petitioners decided to file both petitions.[22]

Curiously, Ms. Schmidt described as an "issue raised in [her] investigation," the question of "whether the Proposed Settlement and Petition for Leave to Compromise should be allowed." Pet'rs' Ex. 70 at 57. Expressing her support for the terms of the Vaccine Program settlement, she provided a detailed recitation of the settlement's financial provisions, see id. at 57- 61, specifically identifying the five elements of the damages award: (1) the past unreimbursable expenses of the Suchers, (2) a lump sum payment for lost future earnings, (3) a lump sum payment for pain and suffering, (4) a lump sum payment for life care expenses to be incurred during the first year after judgment enters, and (5) the cost of an annuity, to provide life care expenses for the remainder of Evelyn's life. After a tallying of the various expenses that were contemplated in the settlement, Ms. Schmidt offered her endorsement "of the Proposed Settlement and the Petition for Leave to Compromise." Id. at 61-62.

At the time of its filing on March 29, 2012, the claimed purpose of Ms. Schmidt's report was moot; months earlier the state court had directed the temporary conservator to accept the Vaccine Program check. By order issued in January 2012, the state court appointed Mr. Milne as the temporary conservator for Evelyn's estate authorizing him to accept the Vaccine Program settlement check in the amount of $961,504.20. See id. at 55. Ms. Schmidt references this earlier issued order in her amended report.

Ms. Schmidt prepared an unrequested report to provide support for an unnecessary petition several months after the state court already had directed the temporary conservator to accept the Vaccine Program check on behalf of Evelyn Sucher. The performance of this needless work was not reasonable.

---

[22]    It is possible that the petition for approval of settlement primarily was filed to serve counsel's interests. One state practice treatise discussing the relevant statutory provision advises counsel to guard against malpractice claim arising out of efforts to settle a claim for an inadequate amount by first seeking approval of the settlement from the court. See 11 Mass. Practice Series, Motor Vehicle Law & Practice § 17:5 (4th ed.). But the costs associated with this protective state court action are not reimbursable under the Vaccine Program.

d.    Ms. Schmidt's Other Work

Ms. Schmidt made a site visit to Evelyn's home on January 9, 2012 to "observe Evelyn interacting with her family." Id. at 57.  Ms. Schmidt commented, in her amended report, on Evelyn's capacity to build strong bonds with people other than her parents, the progression of her abilities over the years, the status of her medical condition and the aggressive behavior she occasionally exhibited.  See id.  Why Ms. Schmidt, who is an attorney, was documenting observations and making inferences that health professionals do, and how this information might have assisted the state court in naming a conservator for Evelyn's estate cannot be explained.

Because the state court appointed Mr. Milne as temporary conservator the same day that it appointed Ms. Schmidt as guardian ad litem, see id. at 49-51, her subsequent work could not have informed the selection of the conservator.  The site visit was simply unnecessary and unreasonable.  Ms. Schmidt's participation in this visit and thereafter her preparation of a report will not be compensated.

Ms. Schmidt also prepared an affidavit that was not associated with her appointment as guardian ad litem.  See Schmidt aff.  Petitioners filed that affidavit in support of their request for the Vaccine Program payment of the surety bond expense required for the appointment of Mr. Milne as conservator of Evelyn's estate.  Ms. Schmidt described in that affidavit her advice to Ms. Sheehan that a waiver of the requirement for the third party conservator was highly unlikely, based on the size of the settlement and the designation of a non-principal as the conservator.  See id. ¶¶ 6, 8.  Ms. Schmidt urged that, based on her experience, any motion requesting a waiver would delay the court's appointment of a conservator.  See id. ¶¶ 8-9.  In the view of the undersigned, this work did assist petitioners as they sought to designate an appropriate conservator for Evelyn and merits compensation.

Ms. Schmidt's affidavit is fairly short – nine paragraphs.  Four paragraphs are simply background, outlining Ms. Schmidt's professional background or reviewing the documents which were filed in the state court matter.  See id. ¶¶ 1-2, 4-5.  The remaining paragraphs of the affidavit recount the discussion between Ms. Sheehan and Ms. Schmidt on the matter of the surety bond.  Ms. Schmidt billed $198.00 (0.4 hours at $495/hour) and another attorney, CHS, billed $568.75 (1.75 hours at $325/hour) for both the affidavit and correspondence, for a total of $766.75.

e.     Hourly Rate and Compensation for Ms. Schmidt's Work

Respondent objects to Ms. Schmidt's requested hourly rate of $495 and urges its reduction. See Third resp. 5. Petitioners provide no justification for this rate, and the undersigned observes that Ms. Schmidt's requested rate is substantially greater than that of Ms. Sheehan, who served as guardianship counsel of record in the state court proceeding for an hourly rate of $225.

Respondent's objection to Ms. Schmidt's rate is well-taken. Absent evidence to the contrary, the undersigned declines to compensate Ms. Schmidt at a higher rate than Ms. Sheehan, who has a similar practice in Massachusetts. The undersigned exercises her discretion to award Ms. Schmidt 1.0 hour of time at $225 per hour, or $225 for the preparation of her affidavit.

f.     Summary of Ms. Schmidt's Work as Guardian Ad Litem

Petitioners sought the appointment of a guardian ad litem when the governing statute did not require such an appointment. From the record, it appears that the state court would not have appointed a guardian ad litem absent petitioners' request. This groundless request caused petitioners to incur $16,000 worth of attorneys' fees associated with Ms. Schmidt's efforts.

Ms. Schmidt also prepared an unrequested and unnecessary report, the state court's appointment of Mr. Milne as first temporary conservator, and later as permanent conservator.

Except for the time Ms. Schmidt expended to prepare the affidavit regarding the need for the surety bond which was filed into the record of Evelyn's Vaccine claim, petitioners' request for fees and costs for Ms. Schmidt's work as guardian ad litem are DENIED. Because petitioners needlessly retained a guardian ad litem, all work performed by either Mr. Homer or Ms. Sheehan pertaining to the guardian ad litem also is DENIED.

2.     Ms. Sheehan's Work as Guardianship Attorney

Maura L. Sheehan served as counsel in the state court guardianship proceeding, and billed petitioners a total of $19,058.49, including $18,007.50 in attorneys' fees and $1,050.99 in expenses. See First appl. 1; Third appl. 2. Ms. Sheehan's fees and costs

21

approach five times the average of the sum of fees and costs sought in recent Program cases for guardianship proceedings.  See Appendix A.

Ms. Sheehan, an associate attorney and several paralegals spent a total of 92 hours on the conservatorship proceeding.  Ms. Sheehan herself billed nearly 73 hours. Respondent does not object to Ms. Sheehan's hourly rate of $225, but does object to the substantial number of hours expended. See First resp. 10; Third resp. 5-7.

In defense of Ms. Sheehan's billing, petitioners explain

[t]he guardianship in this case was complicated.  This was a result of several factors. [1] One of the factors was the budget constraints in Massachusetts probate court.  The staffing level is not adequate to handle the caseload, and special care had to be taken to ensure that the conservatorship was finalized in a timely manner. [2] In addition, the Massachusetts Uniform Probate Code ("MUPC") was recently revised, and the new rules had to be followed. [3] Finally, a large portion of these charges were incurred because of the respondent's opposition to specific guardianship fees and costs.

First reply 7.

This cursory explanation suggests that Ms. Sheehan's substantial billing is primarily due to factors beyond petitioners' control.  However, review of the documents filed in the state court matter and of Ms. Sheehan's billing entries, indicates otherwise. Numerous hours of work were devoted to addressing Mr. Sucher's inability to serve as conservator and to preparing documents for filing that were unnecessary for the establishment of the conservatorship.  The needlessly performed work will not be compensated.

a.      Appointment of a Third-Party Conservator

As discussed earlier, petitioners sought the appointment of a third-party conservator when they discovered that bonding would not issue for Mr. Sucher.  The decision to engage a third-party conservator required work by Ms. Sheehan—and to some extent Mr. Homer— to find, interview, evaluate and select a third-party conservator to recommend to petitioners.  In addition, Ms. Sheehan and Mr. Milne prepared affidavits in support of petitioners' motion for the appointment of Mr. Milne as temporary conservator.  See Affidavit of Maura L. Sheehan in Support of Temporary Appointment

22

of Conservator at ¶¶ 14-15, (Pet'rs' Ex. 70 at 15), Nov. 28, 2011, ECF No. 137-1; Affidavit of Proposed Temporary and Permanent Conservator Attorney Chris A. Milne ¶¶ 9-10, (Pet'rs' Ex. 70 at 39-40), Nov. 1, 2011, ECF No. 137-1.

As compelled by the language set forth in respondent's proffer, petitioners were required to establish either guardianship or conservatorship prior to receiving payment on the settlement. The appointment of a third-party conservator became necessary due to Mr. Sucher's credit score issues. Because petitioners declined to address the issue forthrightly, unnecessary fees were generated.

The additional attorneys' fees and costs incurred to secure the services of a third-party conservator will not be compensated and are DENIED.

> b.    Petition for Leave to Compromise and Settle Minor's Action

As previously discussed, the filing of a petition for settlement approval was not necessary for the state court to name a conservator for Evelyn's estate, and the Vaccine Act does not require compensation of attorneys' fees and costs for this work.

All attorneys' fees and costs incurred in connection with seeking the state court's approval of the Vaccine Program settlement, by any attorney, are DENIED.

> c.    Motion for Immediate Appointment of
> Specific Guardian Ad Litem

As addressed earlier, the motion for the appointment of a guardian ad litem was not needed for the state court to name a conservator for Evelyn's estate. Thus the Vaccine Act does not require the compensation of attorneys' fees and costs for this work.

All attorneys' fees and costs incurred in connection with seeking the state court's appointment of a guardian ad litem, by any attorney, are DENIED.

> d.    Appointment of Both a Temporary Conservator
> and a Permanent Conservator

Petitioners filed dual requests with the state court; one for a temporary conservator and another for a permanent conservator. See Pet'rs' Ex. 70 at 4-11. Petitioners designated Mr. Milne to serve in both capacities.

23

In their request for a temporary conservator, petitioners filed four documents with the state court:

(1) a Verified Motion for Appointment of Temporary Conservator;
(2) a Notice of Appointment of Temporary Guardian and/or Conservator and Notice of Right to Hearing;
(3) an Affidavit of Maura L. Sheehan in Support of Temporary Appointment of Conservator; and
(4) a Request for Speedy Hearing and Short Order of Notice on Verified Motion for Temporary Appointment of Conservator.

See id. at 10-11, 13-19.

Ms. Sheehan conveyed to the state court that final judgment had issued in the vaccine proceeding requiring the appointment of a conservator by December 7, 2011, see id. at 10 (No. 2). For that proposition, she cited to the Vaccine Act and her own affidavit. The Vaccine Act authorizes compensation awards under section 300aa-15, but provides no deadline by which petitioners must provide evidence to respondent that a guardianship/conservatorship has been established.

Judgment entered on the damages decision that issued (in accordance with the executed proffer) awarding a lump sum payment of $961,504.20 that would not be paid to petitioners until they "provide[d] respondent with documentation establishing that they have been appointed as the guardian(s)/conservator(s) of Evelyn Sucher's estate." Damages decision 2. The decision did not contain a deadline by which petitioners were to provide respondent with the required documentation; nor did the court's Judgment set a deadline for the provision of this documentation. Judgment, Aug. 5, 2011, ECF No. 111.

In another document, Ms. Sheehan related to the state court that respondent "seeks to conclude" the vaccine matter on or before January 5, 2012, by issuing the lump sum payment to petitioners provided for in the August 5, 2011 decision. See Pet'rs' Ex. 70 at 19. Ms. Sheehan further communicated to the state court that "[t]here is considerable pending harm to Evelyn caused by [the] delay of this payment." See id.

The source of the asserted deadlines in Ms. Sheehan's filing is unknown, as is the basis for concluding that Evelyn was facing "considerable pending harm" during the pendency of the conservatorship matter.

Petitioners filed the petition for appointment of a conservator on November 29, 2011, more than four months after Vaccine Program decision was issued on July 15, 2011. Petitioners offered the state court several reasons for the delay that concerned either the problems of Ms. Sheehan or the Suchers. See Nov. 28, 2011 Sheehan aff. ¶¶ 13-23. First, Ms. Sheehan reported that she was taking a vacation, which delayed the filing until September 2011. See id. ¶ 13. Then, the Suchers reversed course, abandoning their plan to have Mr. Sucher named as conservator and undertook efforts to engage a third-party conservator, which further delayed the filing until early November 2011. See id. ¶ 15. Finally, a member of Ms. Sheehan's support staff died suddenly on November 5, and Ms. Sheehan required time both to assist the family and to make the correlative adjustments in her office, further delaying the filing until mid-November 2011. See id. ¶¶ 20-22. While the delay may have been unavoidable, it was triggered by the Suchers' issues or those of their guardianship counsel.

Because the damages decision did not require the appointment of a temporary conservator, or the extra work and attorneys' fees that seeking a temporary conservator required, all attorneys' fees and costs incurred in connection with seeking the appointment of a temporary conservator, by any attorney, are DENIED.

> e.     The Summary of Evelyn's Medical History Ms. Sheehan Prepared

Ms. Sheehan provided the state court with a summary of Evelyn's medical history contained in what Ms. Sheehan described as "public"[23] Vaccine Program filings. See Affidavit of Maura L. Sheehan, Oct. 25, 2011, Pet'rs' Ex. 70 at 45-48. In a four-page affidavit, Ms. Sheehan provided detailed information about Evelyn's health between February 2004 and December 2006. Id.

Because the purpose of the state court proceeding was to name a conservator for Evelyn's estate, it is unclear why the state court would need detailed information about Evelyn's health, and how information that was more than five years old at the time it was filed with the state court in November 2011 could assist the state court.

The statute under which petitioners sought to appoint a conservator for Evelyn's estate permits the establishment of a conservatorship for either (1) a minor, or (2) an adult

---

[23]     Vaccine Program filings are not public, and are available only to counsel of record and this court.

unable to manage his or her own business affairs. See Mass. Gen. Laws ch. 190B, § 5-401(b), (c). In the latter circumstance, petitioner must also file a recent medical certificate based upon an examination of the person. See § 5-404(b)(11)(A). This requirement is expressly waived in a circumstance such as this one—where a conservatorship is sought for a minor. See § 5-404(b)(11).

Ms. Sheehan's billing records indicate that she may have been under the mistaken impression that petitioners had to demonstrate to the state court that the minor child Evelyn was not "mentally retarded." See First appl., Tab C at 5 (Oct. 19, 2011 entry, "[w]ork on Affidavits on Health and school records to document not mentally retarded status, for GAL and Probate Court."). But a review of the relevant statute shows that no such proof was necessary.

Thus, all attorneys' fees and costs incurred in connection with providing the state court with Evelyn's medical history, by any attorney, are DENIED.

f.      Exhibits Filed with Petition for Conservatorship

Petitioners filed two volumes of supporting exhibits with their state court petition for conservatorship. See Pet'rs' Ex. 70 at 63-66. Petitioners did not file copies of those exhibits in the vaccine case, but they did provide an index for each volume of the exhibits. A review of the descriptions provided in each index shows that some exhibits were not needed by the state court.

Contained in volume 1, at exhibit 5, are records for educational assessments for Evelyn, which were conducted on February 4, 2011 and March 7, 2011, as well as an undated psychological report. The reason for including this information is unclear. The conservator would have had no responsibility for, and no authority over, Evelyn's educational plans; such determinations were the responsibility of her parents. Because Evelyn's educational plans were not among the conservator's duties, information about such plans would have had no relevance in the state court proceeding.

In volume 2, petitioners provided a second copy of the August 2011 judgment awarding petitioners damages (which had been included in volume 1 as exhibit 1), as well as respondent's July 2011 Proffer, the March 2010 entitlement ruling, a July 2008 pre-hearing memorandum, the legislation authorizing the Vaccine Program, the Vaccine Program rules and information from the Department of Health and Human Services website about the Vaccine Program.

In volume 1, petitioners had denoted the size of Evelyn's estate—that is the lump sum payment from the Vaccine Program of $961,504.20— in their petition under the description of income. See id. at 8. They also had provided the state court with a copy of the July 2011 decision, the future dollar analysis of the life care plan and the judgment. The provision of this information in volume 1 rendered its inclusion in volume 2 unnecessary.

All attorneys' fees and costs incurred in connection with providing the state court with information about Evelyn's education, or volume 2 of supporting exhibits, by any attorney, are DENIED.

### g.     Additional Work Reflected in Ms. Sheehan's Billing Entries

Ms. Sheehan's billing records show that she prepared a power of attorney to allow her to act on behalf of Mrs. Sucher. See First appl., Tab C at 5 (Oct. 18, 2011 entry). This work may have been useful to Mrs. Sucher, but it was not required by the decision issued in this matter and thus is not compensable under the Vaccine Program.

All attorneys' fees and costs incurred in connection with establishing a power of attorney for Mrs. Sucher, by any attorney, are DENIED.

### h.     Ms. Sheehan's Initial Fee Application

Ms. Sheehan's initial fee application covered services provided from July 25, 2010 through January 12, 2012. As discussed, Ms. Sheehan billed for a great deal of work that was not necessary and thus, will not be compensated. With regard to the state court filings on November 29, 2011, the following filings were necessary:

- Entry of Appearance (Maura L. Sheehan)
- Petition for Appointment of Conservator for Minor
- Motion to Waive Appearance of Respondent (Evelyn Sucher)
- Bond with corporate surety
- Affidavit of Proposed Temporary and Permanent Conservator Attorney Chris A. Milne
- Military Affidavit
- Uniform Counsel Certification Form
- Birth Certificate
- Exhibits – (select only)

See Pet'rs' Ex. 70 at 3-9, 12, 37-44, 63-66.

27

The filing of these required documents was made easier by standard forms that are available to each applicant. The standard forms diminish the time required to prepare and file the documents.

Ms. Sheehan's work to secure a surety bond also was necessary. This work included meeting and communicating with her clients, meeting with Mr. Pepper and Mr. Milne, and preparing a fee application for submission on the vaccine claim. But, Ms. Sheehan's attendance at the January 4, 2012 state court hearing for the naming of a temporary conservator was necessitated only by her decision to file redundant petitions for both a temporary and permanent conservator. The undersigned will not award the sum sought for this needlessly performed work.

Respondent has posed no objection to Ms. Sheehan's reasonable hourly rate of $225. The undersigned will compensate Ms. Sheehan for 15 hours of effort in connection with the tasks above, totaling $3,375.00.

There is no objection to the requested costs. Because they are reasonable, they will be compensated.

i.        Ms. Sheehan's Supplemental Fee Application

Ms. Sheehan divided her supplemental fee application of $3,213.75 into two separate invoices, one for fees associated with the guardianship proceeding, and one for fees associated with responding to respondent's objections to earlier fee applications (whether hers or Mr. Homer's).

Invoice for the Guardianship Proceeding

Ms. Sheehan's invoice, for $1,586.25 in fees, covered services provided from February 27, 2012 through April 3, 2012. See Third appl. 14-15.

There were necessarily fewer billing entries during this shorter period of time, for more distinct tasks. This makes a line-by-line evaluation feasible. For the reasons previously set forth in this ruling, the following billing entries are excluded:

For time associated with the unnecessary appointment of the guardian ad litem, Mary Schmidt:

28

| Date | Hours | Rate | Amount |
|---|---|---|---|
| 2/27/2012 | 0.5 | 225 | $112.50 |
| 3/28/2012 | 0.5 | 225 | $112.50 |
| 3/30/2012 | 0.6 | 225 | $135.00 |
| 4/02/2012 | 0.6 | 225 | $135.00 |
| TOTAL | 2.2 | | $495.00 |

For time associated with addressing the special needs trust issue (after the offer to resolve the issue in March 2012, as discussed previously) and for time discussing "DOJ non payment of fees and probate court procedure as alternative:"

| Date | Hours | Rate | Amount |
|---|---|---|---|
| 4/03/2012 | 1 | 225 | $225.00 |
| 4/03/2012 | 0.5 | 225 | $112.50 |
| TOTAL | 1.5 | | $337.50 |

The remaining billing, related to the state court's April 3, 2012 hearing, is allowed. In total, $832.50 in fees are excluded, and the sum $753.75 in fees will be paid. There is no objection to the costs, and they are reasonable and also will be paid.

Invoice Addressing Respondent's Objections

Ms. Sheehan's invoice, requesting $1,627.50 in fees for addressing respondent's objections, pertained to services provided from March 1, 2012 through May 17, 2012. See Third appl. 19-20.

The time that is allowed is set forth below. These entries reflect time spent either providing the state court documents to Mr. Homer (for eventual filing as Pet'rs' Ex. 70), preparing the documents regarding the surety bond, or confirming Mr. Homer's understanding that no special needs trust exists.

| Date | Hours | Rate | Amount |
|---|---|---|---|
| 4/12/2012 | 1 | 75 | $75.00 |
| 3/06/2012 | 0.1 | 225 | $22.50 |
| 3/06/2012 | 0.5 | 225 | $112.50 |
| 3/08/2012 | 0.2 | 225 | $45.00 |
| TOTAL | 1.8 | | $255.00 |

The balance of the requested time is not allowed. Although Ms. Sheehan's billing notes are fairly lengthy, by billing entry standards, the description of what she did is not clear.

For example, Ms. Sheehan spent 2.45 hours on March 1, 2012 performing various tasks in response to the Secretary's objections to petitioners' initial fee application, which included Ms. Sheehan's request for slightly less than $15,000. Among the tasks for which Ms. Sheehan bills is advice to her clients about an "action and remedy for defamatory allegations without fact or other basis." Third appl. 19. To what Ms. Sheehan could be referring cannot be discerned from the record. Ms. Sheehan also billed for reviewing the fee application and the "basis for opposition relative to actions in MA probate court necessary to DOJ requirement of Conservator and Petition required for action on docket." Id. The undersigned is at a loss as to what this means. These unclear tasks will not be compensated.

Ms. Sheehan recorded time spent on the special needs issue, that included drafting an affidavit from a CPA (which was never filed), researching the applicability of judicial notice, and researching special needs trust law in Massachusetts. As discussed earlier, none of this work was necessary because petitioners could have produced the trust documents themselves. Ms. Sheehan joined with Mr. Homer in refusing to produce the state court documents to respondent, but petitioners lacked a basis for withholding the state court documents. These efforts will not be compensated.

Moreover, Ms. Sheehan worked on an alternative filing option for fees through the probate court. Clearly, work expended to collect fees elsewhere is not compensable under the Vaccine Program.

Conclusion

Of the amount requested in Ms. Sheehan's supplemental application, for both invoices, that otherwise has not been excluded, the undersigned allows fees of $1,008.75 and costs of $5.00.

C.    Mr. Homer's Fee Applications

1.    Initial Fee Application

Mr. Homer's initial fee application covered services provided from November 7, 2008 through January 31, 2012. During this time, interim attorneys' fees were awarded

30

(on January 13, 2009), the entitlement decision issued (on March 15, 2010), respondent filed a proffer (on July 11, 2011), after the parties prepared life care plans, the damages decision issued (on July 15, 2011), petitioners' guardianship attorney filed a petition for conservatorship in the state court (on November 29, 2011), petitioners filed a motion for payment of the cost of a surety bond (on December 2, 2011), the state court held a hearing to appoint a temporary conservator (on January 4, 2012), and petitioners filed their final application for fees and costs (on February 1, 2012).

In his first fee application, Mr. Homer sought $47,135.90 in attorneys' fees and $28,893.01 in costs. Respondent did not object to either the hourly rates charged by Mr. Homer or his colleagues, see First resp. 3 n.2, or to the requested costs—which included the cost associated with the life care planner of $27,322.50.

Respondent, however, raised objections to the following billing practices:

- The use of multiple attorneys for particular tasks which respondent asserts led to inefficiency and duplication of effort;
- Mr. Homer's routine practice, as counsel of record, of reviewing each document filed in this matter;
- Research regarding Life Care Planner Standards and Site Visit Attendance;
- Inadequate descriptions of certain paralegal time entries; and
- The amount of time spent on guardianship matters.

The undersigned reviews these objections in turn.

The Use of Multiple Attorneys

The practice of using multiple attorneys to staff a case can create some inefficiencies. Of the identified counsel, Mr. Pepper billed the most hours (152), with additional hours billed by two partners, Mr. Homer (17) and Kevin Conway (14), who performed the brief writing. See First appl., Tab A at 57-58. (Three additional attorneys billed a total of 6 hours, chiefly for brief review. See id.) Mr. Homer billed at hourly rates from $280 to $305, and Mr. Pepper billed at hourly rates spanning from $200 to $203. See id. It appears that Mr. Pepper performed the bulk of the work on the case, under the supervision and direction of Mr. Homer.

Respondent made several objections to time spent by Mr. Homer and Mr. Pepper meeting to discuss the case, or time expended by Mr. Pepper preparing a memorandum to

update Mr. Homer on recent case progress.  See First resp. 5-6.  But on the face of the fee application, neither activity is unusual or inappropriate, and respondent allows that the individual entries are for "relatively small time increment[s]."  Id. 6.  Because Mr. Homer billed only 17 hours over a three-year time period, occasional case updates from Mr. Pepper do not seem unreasonable.  The alternatives might include Mr. Pepper working without supervision, or Mr. Homer performing work that a more junior attorney could do.  Neither of these alternatives appears to be an improvement on the current practice.  Unless otherwise indicated, the requested time will be compensated.

### Mr. Homer's Routine Practice of Reviewing Each Filed Document

Respondent objects to Mr. Homer's practice of reading every document filed in this matter—including the court's orders and respondent's filings.  Respondent characterizes this practice as "reviewing and logging the firm's daily mail," and objects to Mr. Homer's billing for the review of even "non-substantive orders."  Id.  As the attorney of record, Mr. Homer's attention to both court orders and respondent's filings is a reasonable use of his time.  The billed time will be compensated.

### Research Regarding Life Care Planner Standards of Practice and Attendance at Site Visit

Respondent objects to the attorney time spent on June 7, 2010 reviewing the standards of practice for life care planners.  Respondent also objects to the attendance of both Mr. Homer and Mr. Pepper at the first site visit to the Suchers' home in April 2010, and Mr. Homer's billing for travel time to that site visit.  See id. 7.

With respect to review of the standards of practice, petitioners explain that they undertook the review due to a particular concern they had about conduct exhibited by respondent's life care planner during a prior site visit.  See First reply 5.  Petitioners raised this specific concern during a telephonic status conference on June 8, 2010.  Further to the status conference, the undersigned issued an order on June 17, 2010 setting boundaries for the conduct of the site visit.  Under these factual circumstances, Mr. Homer's review of the standard practices, in preparation for the status conference, was reasonable and will be compensated.

Regarding the site visit, Mr. Homer and Mr. Pepper both billed two hours for the visit, and Mr. Homer billed an additional hour for travel time.  See First appl., Tab A at 7 (4/14/2010 entries).  Petitioners explain that Mr. Homer attended the visit to mentor Mr. Pepper, who was a new attorney with the firm at that time, but had a valuable familiarity

with the facts of the case.  See First reply 4.  Mr. Pepper billed $400 for this visit, without billing for his travel time.  To account for the redundancy of having two counsel attend a two-hour site visit and because expenses incurred training new counsel are not recoverable under the Vaccine Program, the undersigned compensates each attorney one hour at his respective hourly rate for the site visit.  The deductions are thus $300 for Mr. Homer's time and $200 for Mr. Pepper's time.

Turning to the charge for Mr. Homer's travel time, the undersigned considers the Court of Federal Claims' guidance that an attorney might bill fully for time associated with travel if counsel can demonstrate that he spent that time productively.  See Hocraffer v. Sec'y of Dept. of Health & Human Servs., No. 99–533V, 2011 WL 3705153, at *24 (Fed. Cl. Spec. Mstr. July 25, 2011) (quoting Gruber v. Sec'y of Dep't of Health & Human Servs., 91 Fed. Cl. 773, 791 (Fed. Cl. 2010).  Because no such explanation has accompanied Mr. Homer's billing entry, see First appl., Tab A at 7 (4/14/2010 entry), the undersigned compensates Mr. Homer for half of his travel time, resulting in a deduction of $150.

### The Work of Various Paralegals

Respondent objects to several entries by the Homer firm's paralegals, including work described as "Stage 2" that respondent claimed not to understand.  See First resp. 7.  Petitioners clarified that "Stage 2" work is comprised of a "detailed, chronological summar[y] of the medical records and other relevant documentation" to which both the firm's attorneys and experts subsequently might refer during a case.  First reply 6.  The undersigned finds "Stage 2" work to be reasonable, but observes that routinely including such an explanation in petitioners' fee application would preclude costly challenges going forward to any "Stage 2" work performed.

Respondent also objects to the hours spent by the firm's paralegals, who bill at rates of $105 to $107 per hour.  Petitioners filed a total of 21 exhibits (many of which were medical records) in the damages phase of this case.  The damages assessment resulted in a substantial settlement, providing lifetime compensation for Evelyn.  Each party engaged a life care planner, and two site visits were conducted.  Such a comprehensive damages assessment entailed the production and review of numerous documents, the organization of which fell primarily to the paralegals.  The work of the Homer firm's paralegals on these tasks was not unreasonable in this case.

Guardianship Proceeding

Respondent objects to the amount of time billed for the guardianship proceeding, which was managed by Ms. Sheehan.  As discussed earlier, numerous tasks and filings completed by Ms. Sheehan are not compensable.  A review of the Homer firm's billing records shows time entries for work with Ms. Sheehan that totaled about $3,000.  See generally First appl., Tab A.

Record review also indicates that Mr. Homer, who is an experienced litigator in this forum, allowed the state court attorneys to stray well beyond what was required in this matter.  The result has been burdensome for all concerned, from the fruitless efforts to resolve the fees issues, to the need to address the billing problems created by the guardianship attorneys.  Substantial time has been expended on this subject, with no value to the petitioners who brought the Vaccine claim.

The difficulty here is distinguishing between the time spent on the numerous unnecessary and thus uncompensable tasks and filings from the time spent on work that was required for the state court to name a conservator.  A line by line evaluation of this lengthy invoice is not feasible.  But, following the guidance provided the Supreme Court, the undersigned considers the work deemed compensable, as discussed previously, and uses "estimates in calculating and allocating an attorney's time." Fox, 131 S. Ct. at 2216 (cited in Hocraffer, 2011 WL 6292218, at *13).  Ms. Sheehan's billing for her work on the guardianship proceeding during this time was reduced substantially for the unnecessary work, a reduction that amounted to approximately three-quarters of her requested billing.  Mr. Homer's billing for work related to the guardianship proceeding is likewise reduced by a comparable sum.

The undersigned reduces counsel's requested fees by $2,000.

Work that Should Have Been Included in the Request for Interim Fees

Respondent also objected to three billing entries between November 6, 2008 and December 9, 2008, as amounts that should have been included in the earlier interim fee application.  See First resp. 5.  Petitioners did not challenge the exclusion of these billing entries, which totaled $84.20.  See First reply 2.  The undersigned excludes this sum from the awarded fees.

34

Summary of Payment for Mr. Homer's Initial Fee Application

Resolution of the various fee objections raised by respondent has resulted in a total deduction of $2,734.20 from Mr. Homer's requested fees in the initial fee application. Respondent made no objection to the costs, and upon review, the costs appear reasonable. The amounts compensated are $44,401.70 in fees and $28,893.01 in costs.

2.      Supplemental Fee Application

In his supplemental fee application, Mr. Homer sought $3,475.60 in attorneys' fees and no costs.

The supplemental fee application covered services provided from February 6, 2012 through March 12, 2012. During this time, respondent filed her response to petitioners initial fee application (on February 29, 2012), the undersigned issued an order allowing the cost of the surety bond (on March 2, 2012), petitioners filed their supplemental application for fees and costs (on March 12, 2012), petitioners filed their motion to expedite ruling on their initial fee application (on March 12, 2012), and petitioners filed their reply to respondent's response to their initial fee application (also on March 12, 2012).

Respondent notes that most of the fees in the supplemental application relate to the preparation of petitioners' reply in support of their initial fee application. See Second resp. 2. Respondent was of the view that petitioners' response to the question about the special needs trust was inadequate, and objected to petitioners seeking fees for engaging in fee litigation. See Second resp. 2.

In general, petitioners are permitted to bill for their time in responding to respondent's objections. See Caves v. Sec'y of Health & Human Servs., No. 07–443V, 2012 WL 6951286, at *10 (Fed. Cl. Spec. Mstr. Dec. 20, 2012) (citing Schuenemeyer v. United States, 776 F.2d 329, 333 (Fed. Cir. 1985) (addressing Equal Access to Justice Act)). In this case, petitioners' reply was reasonable, as were petitioners' efforts to defend the challenged billing entries. The undersigned compensates petitioners for this work.

A review of Mr. Homer's billing records shows time entries for work with either the guardianship attorney (Ms. Sheehan) or the guardian ad litem (Ms. Schmidt), amounting to $1,015. More than half of this time was spent working with Ms. Schmidt, responding to a guardian ad litem questionnaire for the probate proceeding. See Second

appl., Tab A at 3 (2/29/2012 entry).  Because none of the time spent working with the guardian ad litem is compensable, the undersigned reduces the requested fees by $750.

The deduction of $750 from Mr. Homer's fees in the supplemental fee application results in compensation totaling $2,725.60 for fees.

### 3. Second Supplemental Fee Application

In his second supplemental fee application, Mr. Homer requested $2,967.80 in attorneys' fees and $5.64 in costs.  Respondent did not object to the costs, which appear reasonable.

The second supplemental (and final) fee application covered services provided from March 21, 2012 through May 25, 2012.  During this time, respondent filed her response to petitioners' supplemental fee application (on March 29, 2012), the state court held a hearing to appoint a permanent conservator (on April 3, 2012), the undersigned held a telephonic status conference (on April 4, 2012), respondent filed a list of state court documents sought from petitioners (on April 11, 2012), petitioners filed a reply refusing to produce any state court documents (on April 13, 2012), the undersigned ordered petitioners to produce certain state court documents (on April 16, 2012), petitioners filed the state court documents (Ex. 70) (on May 2, 2012), and petitioners filed their second supplemental fee application (on May 25, 2012).

Respondent renewed her objections both to the use of multiple attorneys, and to Mr. Homer's practice of reviewing all orders and filings.  See Third resp. 2-3.  Review of the billing entries shows them to be much the same as in the initial fee application, Mr. Pepper did the bulk of the work, with some oversight and direction from Mr. Homer.  As before, no deductions will be made.

Respondent also objects to petitioners' billing for time spent refusing to produce the trust documents and the state court documents for review.  See Third resp. 3-4.  Review of the billing entries shows that most of the time spent during this period involved either petitioners' resistance to production of both the trust documents and state court documents, various attempts to reach settlement on fees, and communication with the guardianship attorney about the fees.  As previously discussed, none of the time spent opposing production of the trust documents or state court documents will be compensable.

The work for which petitioners will be compensated is the production of the state court documents (Pet'rs' Ex. 70) and the efforts to assist the guardianship attorney in preparing for the April 3, 2012 state court hearing. Mr. Pepper contacted Ms. Sheehan to collect the state court documents, and then prepared them for production. Two hours will be allowed for this task. Mr. Pepper billed for 0.3 hours prior to the April 3 hearing for communicating with Ms. Sheehan, time which will be allowed. A total of 2.3 hours at the hourly rate of $209, $480.70, will be allowed.

For the reasons discussed earlier, the undersigned reduces the requested fees by $2,487.10, resulting in compensation of $480.70.

## IV.    CONCLUSION

Petitioners' initial application for fees and costs is granted-in-part for the sum of $44,401.70 in attorneys' fees and $45,102.00 in attorneys' costs, and is otherwise denied. Attorneys' costs include the fees for both Ms. Sheehan and Ms. Schmidt, as well as the costs for any attorney.

Petitioners' supplemental application for fees and costs is granted-in-part for the sum of $2,725.60 in attorneys' fees, and is otherwise denied.

Petitioners' second supplemental application for fees and costs is granted-in-part for the sum of $480.70 in attorneys' fees and $1,244.39 in attorneys' costs, and is otherwise denied.

**The undersigned hereby awards $93,954.39, representing $47,608.00 in attorneys' fees and $46,346.39 in attorneys' costs, in the form of a check payable jointly to petitioners and petitioners' counsel, Ronald C. Homer.[24]**

---

[24]    As listed at the beginning of this decision, the allocation per attorney is Conway, Homer & Chin-Caplan, P.C., attorneys' fees of $47,608.00, and costs of $28,898.65; Maura L. Sheehan, Esq., attorneys' fees of $4,383.75 and costs of $12,838.99; Schmidt & Federico, P.C., attorneys' fees of $225.00 and costs of $0.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court **SHALL ENTER JUDGMENT** in accordance with the terms of the parties' stipulation.[25]

        **IT IS SO ORDERED.**

s/Patricia E. Campbell-Smith
Patricia E. Campbell-Smith
Chief Special Master

---

[25]    Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties' joint filing of notice renouncing the right to seek review.

| APPENDIX A<br>**Sucher v. Sec'y of Health & Human Servs., 07-058**<br>**Vaccine Program Cases in which Guardianship Fees and Costs**<br>**were Paid Between 2009 to 2013 (N=18)** | | |
|---|---|---|
| **Case** | **Guardianship Fees & Costs** | **State** |
| Torres v. Sec'y of Health & Human Servs., No. 09–867V 2013 WL 2256136, at *3 (Fed. Cl. Spec. Mstr. Apr. 30, 2013). | $4,379.40 | Pennsylvania |
| Parmley v. Sec'y of Health & Human Servs., No. 09–698V, 2013 WL 1459709, at *1 (Fed. Cl. Spec. Mstr. Mar. 18, 2013). | $5,853.50 | Oregon |
| Myers v. Sec'y of Health & Human Servs., No. 11–434V, 2012 WL 6176474, at *2 (Fed. Cl. Spec. Mstr. Nov. 13, 2012). | $4,259.25 | Tennessee |
| Kenney v. Sec'y of Health & Human Servs., No. 09–0738V, 2012 WL 6013214, at *2 (Fed. Cl. Spec. Mstr. Oct. 24, 2012). | $6,214.00 | Maine |
| Ramsey v. Sec'y of Health & Human Servs., No. 09–896V, 2012 WL 5205835, at *1 (Fed. Cl. Spec. Mstr. Sept. 24, 2012). | $4,528.00 | Texas |
| Dow v. Sec'y of Health & Human Servs., No. 09–801V, 2012 WL 2914818 (Fed. Cl. Spec. Mstr. June 26, 2012). | $2,557.68 | Maine |
| Lilley v. Sec'y of Health & Human Servs., No. 09–31V, 2012 WL 1836323 (Fed. Cl. Spec. Mstr. Apr. 30, 2012). | $8,500.00 | Tennessee |
| Melnikova ex rel. Yevstigneyev v. Sec'y of Health & Human Servs., No. 09–322V, 2012 WL 1339606, at *5 (Fed. Cl. Spec. Mstr. Mar. 27, 2012). | $4,285.50 | Oregon |
| Vanoost v. Sec'y of Health & Human Servs., No. 10–516V, 2012 WL 1238362, at *1 (Fed. Cl. Spec. Mstr. Mar. 27, 2012). | $1,870.82 | Illinois |
| Philie v. Sec'y of Health & Human Servs., No. 10–871V, 2012 WL 1382673, at *1 (Fed. Cl. Spec. Mstr. Mar. 26, 2012). | $2,174.56 | Vermont |
| Gonzalez v. Sec'y of Health & Human Servs., No. 10–292V, 2012 WL 1392246 (Fed. Cl. Spec. Mstr. Mar. 23, 2012). | $2,327.25 | Illinois |

| APPENDIX A<br>**Sucher v. Sec'y of Health & Human Servs., 07-058**<br>**Vaccine Program Cases in which Guardianship Fees and Costs**<br>**were Paid Between 2009 to 2013 (N=18)** | | |
|---|---|---|
| **Case** | **Guardianship Fees & Costs** | **State** |
| Lindsey ex rel. Lindsey v. Sec'y of Health & Human Servs., No. 08–258V,  2011 WL 6046605, at *1 (Fed. Cl. Spec. Mstr.) Nov. 15, 2011 | $1,750.00 | Kansas |
| Amar v. Sec'y of Health & Human Servs., No. 06–221V, 2011 WL 6077558, at *24 (Fed. Cl. Spec. Mstr. Nov. 10, 2011). | $3,520.50 | Texas |
| Haber v. Sec'y of Health & Human Servs., No. 09–458 V, 2011 WL 839111, at *3 (Fed. Cl. Spec. Mstr. Feb. 14, 2011). | $2,500.00 | Connecticut |
| Cansler ex rel. Cansler v. Sec'y of Health & Human Servs., No. 09–596V,  2011 WL 597791, at *3 (Fed. Cl. Spec. Mstr. Feb. 2, 2011). | $3,210.59 | Oregon |
| Finet ex rel. Finet v. Sec'y of Health & Human Servs., No. 03–348V, 2011 WL 597792, at *3 (Fed. Cl. Spec. Mstr. Jan. 31, 2011). | $7,440.00 | Virginia |
| Gruber ex rel. Gruber v. Sec'y of Health & Human Servs., 91 Fed. Cl. 773, 782, 797 (Fed. Cl. Feb. 25, 2010). | $4,269.50 | Illinois |
| Francis ex rel. Van Burch v. Sec'y of Health & Human Servs., No. 99–520V,  2009 WL 3254020, at *1 (Fed. Cl. Spec. Mstr. Sept. 3, 2009). | $3,000.00 | New York |